UNITED STATES FIDELITY & GUARANTY CO. v. WALKER, Superintendent of Banks of State of Alabama.

(Circuit Court of Appeals, Fifth Circuit.   January 24, 1918.)

No. 3147.

1. PRINCIPAL AND SURETY ⬅123(1)—NOTICE TO SURETY.
    Where a bond, conditioned to save a bank harmless from embezzlement or larceny of its cashier, declared that, on discovery of any act capable of giving rise to any claim, the bank should at the earliest practicable moment give notice to the surety, the bank was not required to give notice, when it was not so far informed of the conduct of its cashier, and of the intent accompanying that conduct, as to be aware that he was guilty of what amounted to embezzlement or larceny; suspicion not being enough.

2. PRINCIPAL AND SURETY ⬅123(1)—NOTICE TO SURETY—REQUIREMENT OF BOND.
    Where a bond conditioned to save a bank harmless from embezzlement or larceny of its cashier, required the bank, on discovery of any act capable of giving rise to a claim, to give notice to the surety at the earliest practicable moment, and declared that knowledge of a president, vice president, director, or other executive officer should be deemed the knowledge of the bank, recovery cannot be denied, because no notice was given, where the only representatives of the bank who were apprised of the cashier's larceny or embezzlement participated in or connived at his offense, for, notwithstanding the terms of the bond, the knowledge of such officials cannot be deemed knowledge of bank.

3. PRINCIPAL AND SURETY ⬅79—LIABILITY OF SURETY—DEFENSES.
    Where the president of a bank incited and encouraged the cashier to appropriate the funds of the institution to his own use, the cashier cannot be deemed acting under the instructions of a superior, so that the surety on his bond, conditioned against loss by larceny or embezzlement, might escape under the clause excepting liability for acts done at the direction of a superior officer.

4. PRINCIPAL AND SURETY ⬅161—ACTIONS—RECOVERY.
    In an action on a cashier's bond, conditioned to save a bank harmless, evidence *held* to show that as part of a fraudulent scheme the cashier, who was authorized to draw checks in the name of a partnership induced a third person, who was insolvent, to execute a note, that he then credited the sum to the account of the partnership and withdrew it for his own use, and that such action was not taken on objection by the partnership, that it was not liable on a note executed by it and held by the bank, but was a scheme of embezzlement, rendering the surety liable.

5. BILLS AND NOTES ⬅92(5)—CONSIDERATION—VALIDITY.
    A note given to a bank to procure its surrender of a note of the third person is a binding obligation, though the maker of the note did not obtain the consideration therefor.

6. TRIAL ⬅260(1)—INSTRUCTIONS—REFUSAL.
    The refusal of requests in substance covered by the instructions given is not error.

In Error to the District Court of the United States for the Middle District of Alabama; Henry D. Clayton, Judge.

Action by A. E. Walker, Superintendent of the Banks of the State of Alabama, liquidating the Clanton Bank, against the United States Fidelity & Guaranty Company. Judgment for plaintiff, and defendant brings error. Affirmed.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Lee H. Weil, Davis F. Stakely, and J. W. Vardaman, all of Montgomery, Ala., for plaintiff in error.

B. P. Crum and Leon Weil, both of Montgomery, Ala., for defendant in error.

Before WALKER and BATTS, Circuit Judges, and FOSTER, District Judge.

WALKER, Circuit Judge. This was an action on a bond or contract by which the plaintiff in error obligated itself, subject to stated conditions, "to make good and reimburse" the Clanton Bank "such pecuniary loss as may be sustained by" the bank within a period named "by reason of the fraud or dishonesty of" E. A. Mathews, its cashier, "in connection with the duties of his office or position, amounting to embezzlement or larceny." Among the conditions stated in the bond were the following:

"That on the discovery of any act capable of giving rise to a claim hereunder, the employer shall at the earliest practicable moment give notice thereof to the company. * * * That the company shall not be liable, by virtue of this bond, for any act or thing done or left undone by the employé, in obedience to or in pursuance of any instructions or authorization received by him from the employer or any superior officer. * * * This bond shall become void as to any claim for which the company would otherwise be liable, if the employer shall fail to notify the company of the occurrence of the act or omission out of which said claim shall arise immediately after it shall come to the knowledge of the employer; and the knowledge of a president, vice president, director, secretary, treasurer, manager, cashier, or other like executive officer shall be deemed under this contract the knowledge of the employer."

The complaint claimed the amount of the penalty of the bond, $7,500, and its averments showed that the Clanton Bank lost more than that amount by acts of Mathews, as cashier, which were such as made the maker of the bond liable. The defendant pleaded the general issue and filed a number of special pleas, which, severally, set out the above-quoted conditions of the bond and undertook to show that those conditions were violated or not complied with.

[1, 2] Complaint is made of the action of the court in sustaining demurrers interposed to several special pleas. If there was error in any of those rulings it was not a reversible one, as it is disclosed that in the trial the defendant was permitted to introduce evidence as to the matters upon which the special pleas were based, and that that evidence was submitted to the jury under instructions which permitted a finding for the defendant, if either of the conditions of the bond which was relied on was violated or not complied with. The evidence was not such as to require a finding for the defendant based upon either of those conditions. By the terms of the bond no conduct of the cashier made the defendant liable unless it amounted to embezzlement or larceny. This being so, the above-quoted provisions as to the bank giving notice are not to be so construed as to require action by the bank when it was not so far informed of the conduct of its cashier and of the intent accompanying that conduct as to be aware that he was guilty of what amounted to larceny or embezzlement. The existence of a mere suspicion of misconduct was not enough. American Surety Co. v. Pauly, 170 U. S. 133, 147, 18 Sup. Ct. 563, 42 L.

Ed. 987. Nor are those provisions to be regarded as contemplating the giving of notice when the only representatives of the bank, who were apprised of the cashier's guilt of larceny or embezzlement participated in or connived at his crime. Fidelity & Deposit Co. v. Courtney, 186 U. S. 342, 361, 22 Sup. Ct. 833, 46 L. Ed. 1193. From the evidence adduced it was permissible to find that there was no lack of promptness in giving notice to the defendant of the cashier's criminal misconduct after information of that misconduct was acquired by a director or official authorized to speak for the bank who did not share in the cashier's guilt.

[3] The defendant introduced testimony tending to prove that acts of the cashier which resulted in losses to the bank for which the defendant was made liable by the verdict and judgment were authorized and directed by the president of the bank. There was evidence tending to prove that the president was a merely nominal official, and was not really the cashier's superior officer, and, further, that he was a participant in the cashier's criminal conduct. This state of the evidence made the question raised by the defendant's contention based upon the provision of the bond relied on in this connection one for the jury. Certainly that condition contemplated such an instruction or authorization by a superior as could serve as an excuse for the subordinate's obedience to it, not a guilty incitement by a superior officer to the commission of a crime. Fidelity & Deposit Co. v. Courtney, supra. The evidence bearing upon the defenses based on the above-quoted conditions of the bond were submitted to the jury under appropriate instructions.

[4-6] It is contended that there was error in rulings of the court which permitted the defendant to be charged with the amount paid on a $2,000 check drawn by the Chilton Fertilizer Company by Mathews, its treasurer. That company had a deposit account with the bank, and Mathews was authorized to draw checks in its name. The $2,000 withdrawn from the bank on the check mentioned was used by Mathews to satisfy an execution against himself. The amount to the credit of the Chilton Fertilizer Company was made sufficient to cover the $2,000 check in the following manner: For a considerable time prior to the date of that check the bank had held a note on which the Chilton Fertilizer Company appeared as a maker, which took the place of a note made by others, the latter note having been surrendered. Pursuant to a direction given by the state superintendent of banks to collect interest on the note signed by the Chilton Fertilizer Company that company was charged on its deposit account with the amount of interest accrued on that note. This occurred several months before the $2,000 check was drawn and paid. There was evidence tending to prove that, when persons who were interested in the Chilton Fertilizer Company learned of the interest charge having been made on its account, they protested, and demanded that the amount be refunded, claiming that the Fertilizer Company was not liable on the note. On the day the $2,000 check was drawn Mathews procured one Jowers to make his note to the bank for $2,172.48. Jowers was insolvent, and was indebted to the bank on notes aggregating a larger amount, which had been charged to profit and loss as worthless. On

the same day the new note of Jowers, which was worthless, was taken, the interest and discount account of the bank was credited with the amount of that note, its loans and discounts account was debited with that note, the interest and discount account was debited $2,053.73, the amount of the previous interest charge on the Chilton Fertilizer Company account, and the same amount was entered as a credit on the fertilizer company's account.

The Chilton Fertilizer Company was a partnership. The obligation to the bank incurred by the latter's acceptance of the new note as a substitute for one it held against a third party was not canceled or affected by the subsequent failure of the makers of the new note to acquire the properties of the maker of the surrendered note. A note given to a bank to procure its surrender of a note of a third party held by it is a binding obligation. There was nothing to indicate that in the subsequent suit, in which judgment was recovered on the Chilton Fertilizer Company note, the liability on it of any of its makers was even questioned. No tenable or even plausible ground for questioning the liability of any maker of the note was disclosed. Mathews took no action on the demand made several months before for a repayment of the interest collected until he had occasion to get the amount required to satisfy the execution against himself. The evidence was such as to support findings that there was an absence of any bona fide belief that the Chilton Fertilizer Company was entitled to the credit which was entered on its account, and that the taking of the worthless Jowers note and the making of the several book entries which followed were but steps in carrying out a fraudulent scheme, concocted by Mathews to enable him to withdraw from the bank $2,000 of its money for his own use and give a color of regularity to his conduct. Under instructions given by the court, the jury were forbidden to find against the defendant as to the $2,000 item mentioned, unless they found from the evidence that the withdrawal of that amount from the bank by Mathews constituted larceny or embezzlement. In view of the giving of such instructions, it was not reversible error for the court to refuse charges, requested by the defendant, to the effect that there should not be a finding against the defendant as to the $2,000 item, if the jury believed from the evidence that Mathews' acts in having the credit entered on the Chilton Fertilizer Company's account and in drawing the check in the name of that company were unaccompanied by a criminal intent.

Our examination of the record has led us to the conclusion that no reversible error was committed.

The judgment is affirmed.