### SUZUKI et al. v. NATIONAL SURETY CO.

(Circuit Court of Appeals, Second Circuit. April 9, 1923.)

No. 179.

1. **Principal and surety ⬚123(1)—Failure to give three days' notice as to vessel hire default held not excused by doubt as to whether vessel was off hire.**

Failure of vessel owners' agents, plaintiffs, to give surety on charterer's bond notice within three days of default in payment by charterers of monthly hire, *held* not excused by doubt as to whether there was in fact a default; that is, whether the "breakdown" clause of the charter had become operative, so as to render the vessel "off hire," where personal knowledge as to whether the vessel was off hire could readily have been had, and was possessed by the master of the vessel, who was plaintiff's agent.

2. **Shipping ⬚62—Knowledge of master imputed to vessel owners.**

The master of a vessel, being the agent of the owners' agents in respect to the possession and general management of the vessel, his knowledge that she was on hire was imputable to them.

In Error to the District Court of the United States for the Southern District of New York.

Suit at law by Yone Suzuki and others, copartners doing business under the firm name and style of Suzuki & Co., against the National Surety Company. Judgment for defendant, and plaintiffs bring error. Affirmed.

This case comes up on a writ of error to review a judgment of nonsuit in an action upon a bond. The plaintiffs in error, who were plaintiffs below, as agents for the owners of the steamship Kofuku Maru, executed a time charter of the vessel to Cragin & Co., which provided that payment of the charter hire should be made in New York monthly in advance. It also provided that the charterers were to furnish to the owners a bond covering one month's hire. The National Surety Company, defendant in error, furnished the bond, the penalty of which was $86,500, calculated to be the equivalent of one month's hire. It contained the clause: "That, in the event of any default on the part of the principal, a written statement showing such default shall within three days be delivered by registered mail to the National Surety Company at its home office in the city of New York, and in the event of any default the surety shall have the right, at its option, to proceed or procure others to proceed with the performance of the * * * charter party."

---

⬚For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The vessel was delivered to the charterer pursuant to the terms of the contract on September 17, 1919. The hire for the month beginning November 17 following was not paid, but no notice of nonpayment was given to the surety company prior to plaintiff's letter to the defendant on December 10, 1919, 24 days after default. The action brought was to recover one month's hire, or the sum of $86,500. The plaintiff, through one Statt, demanded, on November 17, 1919, the charter hire then due, and rendered Cragin & Co. a bill. Cragin & Co. made the claim that the vessel was then "off hire" under clause (15) of the charter, providing: "That in the event of the loss of time from deficiency of men or stores, fire, breakdown, or damages to hull, machinery, or equipment, grounding, detention by average, accidents to ship or cargo, dry-docking for the purpose of examination or painting bottom, or by any other cause preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost. * * * "

But Statt repeatedly demanded payment of the monthly hire. On November 1, 1919, Suzuki received a cable from Azai, the captain of the vessel, which was then discharging her cargo at Bordeaux, that hold 4 was leaking badly and requesting them to "make the necessary arrangements so that we may go into dry dock on our arrival in New York." On November 7 Asai again cabled Suzuki in New York: "Hold 3 leaking badly fix dry dock arrangements New York upon return."

The leaking was not serious in fact, and did not damage the cargo or interfere with the discharging, which was not completed until November 28. The master explained his cables by saying that the bottom of the vessel was foul and he wished her to be put in dry dock, so that she could make fast time for which he had been promised a gratuity.

Hunt, Hill & Betts, of New York City (George C. Sprague, H. Victor Crawford, and Edna Rapallo, all of New York City, of counsel), for plaintiffs in error.

William J. Griffin, of New York City (M. O. Garner, of New York City, of counsel), for defendant in error.

Before ROGERS and MAYER, Circuit Judges, and AUGUSTUS N. HAND, District Judge.

AUGUSTUS N. HAND, District Judge (after stating the facts as above). Plaintiffs contend that the three days' notice of default in payment of hire "nominated in the bond" meant three days after knowledge of default. There was in fact a default, no matter what interpretation may be given to the master's cables, and no matter how far they were true. Until November 28 the vessel was discharging her cargo without injury to it. Under such circumstances she was performing her functions, there had been no "loss of time," and the "breakdown" clause of the charter had not become operative. If the master sent cables to mislead the plaintiffs as to the condition of her hull, he never informed them that she could not discharge, or of any facts which showed that she was at the time off hire. The most that can be said of the effect of his cables is that they gave Cragin & Co. reason to believe that she would become off hire after she had reached New York and had been placed in dry dock. She was going there to take on another cargo after repairs were made. The three days' notice after default were prescribed in the bond, and compliance with that requirement was a condition of liability. National Surety Co. v. Long, 125 Fed. 887, 60 C. C. A. 623; United States Fidelity & Guaranty Co. v. Rice, 148 Fed. 206, 78 C. C. A. 164.

[1, 2] It is also contended that the knowledge of the master that the vessel was not off hire cannot be imputed to the plaintiffs because he was not their agent in respect to the unloading of the cargo (The Santona [C. C.] 152 Fed. 516), and was, moreover, engaged in a fraud upon them. He was, however, their agent in respect to the possession and general management of the vessel (The Santona, supra), and his knowledge that she was on hire was their knowledge (Pine Mountain Iron & Coal Co. v. Bailey, 94 Fed. 258, 36 C. C. A. 229). Nor did any purpose of personal gain which the master had in representing that the vessel was leaking so that she would have to go into dry dock when she reached New York relate to the time that she was discharging or indicate that she was unfit for that purpose. He made no representation when he sent the cables that she was then off hire. The plaintiffs made no attempt to learn whether the ship had ceased discharging, or was for any reason off hire, on November 17:

"Notice of facts which would incite a man of ordinary prudence to an inquiry under similar circumstances is notice of all the facts which a reasonably diligent inquiry would disclose." Coder v. McPherson, 152 Fed. 951, 82 C. C. A. 91; Grandison v. National Bank of Commerce, 231 Fed. 809, 145 C. C. A. 620.

On the contrary, they insisted that hire was due, and demanded payment from Cragin & Co. on that date. She continued regularly to discharge until November 28. It is to be remembered that the right of the surety company to prompt notice was no merely technical right. It had the right to proceed to carry out the charter party itself in the event of default, or to pursue the charterer who failed to perform, and thus attempt to mitigate damages. Without such a notice the surety was remediless, and if the plaintiffs are right could do nothing but wait and pay. The decisions relating to fidelity bonds do not apply. American Surety v. Pauly, 170 U. S. 133, 18 Sup. Ct. 552, 42 L. Ed. 977; United States Fidelity & Guaranty Co. v. Walker, 248 Fed. 42, 160 C. C. A. 182. Persons occupying positions of trust and giving bonds for honest conduct inevitably conceal their breaches of trust, and it is a reasonable rule that a notice of default need not be given by the obligee until actual knowledge of the default has reached him, or such a condition of affairs exists as shows that absence of knowledge is due to the obligee's own negligence. In the present case, personal knowledge as to whether the vessel was off hire could readily have been had by the Suzuki firm and was possessed by the master of the vessel, who was their agent. The charter hire was due on a definite date, which the plaintiffs knew. If they wished to avoid giving the notice within three days as prescribed, they must at least show that they were misled, or took some means to discover whether the vessel was off hire.

It follows that (1) the vessel was in fact not off hire on November 17, when hire was demanded; (2) nothing was done to lead the plaintiffs to believe that the hire was not then due; (3) the condition precedent to liability on the part of the surety company was not complied with, and the complaint was properly dismissed.

The judgment must accordingly be affirmed.