**NEW AMSTERDAM CASUALTY CO. v. CENTRAL NAT. FIRE INS. CO.***

(Circuit Court of Appeals, Eighth Circuit. February 13, 1925.)

No. 6631.

**1. Principal and surety ⊜123(3)—Failure of obligee to notify surety company of defaults of principal held to relieve company from liability.**

The bond given by a surety company for faithful performance of a contract by an insurance agency corporation with its principal provided that "the obligee, upon learning of any act which may be made the basis of any claim hereunder, written notice thereof shall be mailed to the surety * * * within 30 days." *Held* that, where agency failed to remit sums shown to be due from it by its reports made from time to time, as required by the contract, failure of obligee to notify surety of such defaults within 30 days was a breach of the contract, which relieved surety from liability.

*Rehearing denied May 2, 1925.

**2. Insurance ⊜146(3)—Principal and surety ⊜59 — Unambiguous provisions of surety company bond to be enforced as other contracts.**

It is only when a provision of a bond by a surety or insurance company is ambiguous, and subject to two different constructions that it will be construed against the company.

In Error to the District Court of the United States for the Southern District of Iowa; Martin J. Wade, Judge.

Action at law by the Central National Fire Insurance Company against the New Amsterdam Casualty Company. Judgment for plaintiff, and defendant brings error. Reversed.

Oscar Strauss, of Des Moines, Iowa (O. M. Brockett, of Des Moines, Iowa, on the brief), for plaintiff in error.

George F. Henry, of Des Moines, Iowa (Phineas M. Henry, of Des Moines, Iowa, on the brief), for defendant in error.

Before SANBORN, Circuit Judge, and TRIEBER and PHILLIPS, District Judges.

TRIEBER, District Judge. The cause was tried to the court, a trial by jury having been waived by written stipulation of counsel, and judgment for the amount claimed rendered for the plaintiff, after a motion of the defendant for judgment had been denied. The parties will be referred to as they appeared in the trial court, the insurance company as the plaintiff, and the casualty company as the defendant.

The bond executed by the defendant on May 29, 1920, was for the sum of $30,000 to indemnify the plaintiff for any losses sustained by it by reason of the default of the Ballard-Greene-Smith Corporation, appointed general agents of the plaintiff for writing fire insurance for it in the states of Pennsylvania, Maryland, New Jersey, and New York. The contract between the plaintiff and this general agent, dated May 28, 1920, after reciting the appointment of the agent and the power bestowed on it, contained the following additional provisions:

"The said second party shall forward to the home office of the Central National Fire Insurance Company at Des Moines, Iowa, at least twice each week original daily reports and indorsements of policies issued by them or received from subagents appointed by them, and shall, not later than the 15th day of each month, forward a regular monthly account current to the first party at Des Moines, Iowa, of their own business and the original account currents received from their

agents, containing detailed statement of the business done by each subagent during the preceding month, accompanied by all canceled policies and vouchers for charges made therein, together with a monthly recapitulation of all the business of said agency, and shall, not later than seventy-five (75) days after the month for which statement is rendered, forward a remittance to the said company for the balance shown to be due by monthly statement."

It further provided:

"The second party assumes and agrees to pay any and all liability of Rickert, Mellinger & Co., of Lancaster, Pa., to the Central National Fire Insurance Company arising under the contract between said parties dated December 2, 1918, for the months of November and December, 1919, and January, February, March, and April, 1920. The amount due for November and December, 1919, and January, February, and March, 1920, is hereby agreed to be the sum of twenty-two thousand four hundred twenty-eight and 38/100 dollars ($22,-428.38). The amount thereof for the months of November and December, 1919, and January, 1920, shall be paid by the second party to the first party on or before May 15, 1920, and the further payments due under said contract shall be paid according to the terms thereof."

The condition of the bond of the defendant contained, among others, the following provisions:

"The condition of this bond being that the said Central National Fire Insurance Company and the said Ballard-Greene-Smith Corporation have entered into a general agency contract, a copy of which is hereto attached, the faithful performance of which on the part of the said Ballard-Greene-Smith Corporation is hereby guaranteed:

"Now, therefore, if the said Ballard-Greene-Smith Corporation shall well and faithfully perform each and every condition of its contract with the Central National Fire Insurance Company, there can be no claim under this bond; otherwise, it shall be of full force and effect.

"Provided, however, that no changes or amendments to the contract hereto attached shall be made without the written consent of the surety, and that the obligee, upon learning of any act which may be made the basis of any claim hereunder, written notice thereof shall be mailed to the surety at its office at No. 60 John street, New York City, New York, within thirty days after so learning of any such act; that the surety may at its op-

tion cancel this bond by giving forty-five days' notice in writing to the obligee, and this bond shall be deemed canceled at the expiration of said thirty days, the surety remaining liable for any act of the principal which may have been committed by the said principal up (to) the date of said cancellation, but shall not be liable for any act of the principal committed after the expiration of said thirty days; and that any suits at law or proceedings in equity brought on this bond to recover any claim hereunder must be instituted within six months next after the obligee first becoming aware of any act which may be made the basis of a claim hereunder."

The petition, after setting out the agreement between the plaintiff and the corporation, alleged:

"That prior to the 2d day of July, 1920, the said Ballard-Greene-Smith Corporation mailed to this plaintiff, and this plaintiff received, a statement of the indebtedness of said corporation to this plaintiff growing out of the business transacted by said corporation under said contract during the month of May, 1920, showing an indebtedness to this plaintiff on account of such business in the sum of $3,491.91. That thereupon, and on the 2d day of July, 1920, this plaintiff wrote said corporation stating that the proper balance chargeable to said corporation upon said May account was $3,482.18, instead of $3,491.91, and the said corporation made no objection to such correction, and on the 21st day of August remitted to plaintiff upon said May account the sum of $2,-538.61, leaving a balance of $943.57, which has not been paid, except as hereinafter stated."

It then sets out failures of the corporation to remit the amounts due for policies written by it for the plaintiff every month thereafter, which on April 1, 1921, showed a balance due the plaintiff from the corporation of $8,857.85 for moneys collected by it for policies it issued for and in behalf of the plaintiff, and the sum of $2,408.67 balance due on the Rickert, Mellinger & Co. indebtedness assumed by the corporation in its contract with the plaintiff.

[1] A demurrer to the petition and amendment thereto was by the court overruled, whereupon the defendant filed its answer. In view of the conclusion reached by us, it is only necessary to set out the following plea in the answer, to wit:

"That one of the conditions of the bond given by it jointly with the Ballard-Greene-Smith Corporation unto the plaintiff, and

under which the liability of the defendant to the plaintiff, if any, arises, which liability is sought to be enforced in this action, reads as follows, to wit: 'That the obligee, upon learning of any act which may be the basis of any claim hereunder, written notice thereof shall be mailed to the surety at its office, No. 60 John street, New York City, New York, within thirty days after so learning of any such act'; and the defendant further alleges that it was provided in said bond that, upon the failure to perform the conditions thereof, the said bond should be void and of no effect."

It is then alleged that "on July 15, 1920, a large sum became due from the Ballard-Greene-Smith Corporation unto the plaintiff under the terms of the contract, Exhibit B, amounting to many thousand dollars, but the exact amount of which the defendant is now unable to state, and that default was made at such time by the Ballard-Greene-Smith Corporation in the payment of the amount due, and that the default became and was known unto the plaintiff and its officers on July 15, 1920. The defendant further alleges that from month to month during the year 1920 there became due to the plaintiff from the said Ballard-Greene-Smith Corporation sums of money by the terms of said contract, Exhibit B, and that the defendant and its officers were fully advised and were aware of the fact that such sums were due monthly and were fully advised of the fact that default was made in the payment thereof from month to month, and that such defaults might furnish the basis of a claim against this defendant under its bond, Exhibit A, and now assert the defaults in such payment as a basis of the claim in this suit. The defendant alleges that the plaintiff wholly failed, within thirty days from the time of the said separate and several defaults, or at any other time, to furnish the defendant with notice of the said defaults of the said Ballard-Greene-Smith Corporation, except that on January 11, 1921, the plaintiff did mail a letter to the defendant informing it that the Ballard-Greene-Smith Corporation was indebted to the plaintiff in approximately the sum of $16,000, of which $7,913.59 was past due, and demanded payment of the amount due."

And it pleads that by reason of the failure to give the defendant the notice, as required by the terms of its bond, it is not liable. The undisputed evidence is that the first notice by the plaintiff to the defendant of any default or breach of the contract by the corporation was given on December 20, 1920, although the current balances due to it from the corporation, beginning in May, 1920, and continuing every month thereafter, were not accounted for or paid by the corporation to the plaintiff, as required by the contract between them.

It was also shown that on June 11, 1920, the plaintiff wrote to the corporation that "practically no canceled policies received in this office, yet there have been numerous cancellations requested, and we have been advised by your office from time to time that certain canceled policies were in your possession and would come forward at some future date. We would like to have these canceled policies forwarded at least once a week, as by holding them in your office we will frequently write follow-up letters asking for their return, which letters would be unnecessary if the policies were returned promptly to this office. Please arrange to have these canceled policies forwarded in accordance with the above, accompanying each shipment of cancellations with a return premium abstract. In regard to forwarding of daily reports, we find that quite frequently we have been carrying liability for a month or longer on a risk without any knowledge of the same. This would lead us to believe that the daily reports have been held up, or perhaps binders have been issued, and no notice of the binder sent to this office. It is our desire to be advised of our liability at the very earliest date possible, and for this reason we are requesting that you forward daily reports promptly, but if for any reason the policy cannot be written please forward binder to us advising us of the liability assumed."

On September 3, 1920, the plaintiff wrote the corporation:

"Our accounting department have brought to our attention that your premium and return premium abstracts contain a great many mistakes, and that frequently daily reports are listed, but are not included with the abstracts. We also find that canceled policies and indorsements are sometimes listed, but no vouchers received. We occasionally find that a daily report or canceled policy is sent to us independent of any abstract whatever, and it necessitates our writing you a letter to have it included in a subsequent abstract. If the department in your office who has the preparation of these abstracts in charge will exercise more care in their preparation, correspondence such as we have indicated above will be avoided. We also wish that you would make up your summary promptly at the close of the month, said

summary to show the balance due us for the previous month's business. We also wish that you make corrections in accordance with letters addressed to you, instead of making an entry in a subsequent month to correct errors of a previous month. If we notify your office of corrections in your account which change the balance due, and request that you remit in accordance with the corrected balance, we wish that you would kindly do so, as it will simplify the bookkeeping at this end of the line quite materially."

On November 29, 1920, plaintiff wrote the corporation:

"On the 23d inst. we wrote you, calling attention to the fact that no remittance had been received from you on account of the outstanding balance from your agency, and we are now supplementing this letter with a statement showing just how your account stands on our books at the present time. According to our records there is due us up to October 1st from the Ballard-Greene-Smith Corporation Agency $5,504.92, which amount, together with the Kosmak-Mellinger Company balance of $2,408.67, makes a total of $7,913.59, which must be taken care of by your office in order that your account may be in acceptable condition to the insurance departments.

"Permit us to call your attention to your May account, which you reported as $3,491.-91. We wrote you on July 2d, stating that the proper balance for May was $3,482.18, and we explained to you just how this corrected balance was arrived at, and requested that you remit in accordance with the same. However, when you remitted on August 21st you remitted $2,538.61, this amount being the amount of your May balance, according to your figures, less $953.30, an amount which we are unable to verify, but which we presume was intended to include the Kosmak-Mellinger return premium items, which you show as $905.31 on an account which you rendered, and which was received here June 21st, the same including return premium abstracts which were unnumbered, but which you indicated as Kosmak-Mellinger cancellations. We checked over these abstracts and discovered that the proper amount of return premium, less commission, was $887.67, instead of $905.31, and we wrote you, explaining just how we had arrived at this amount, and when we rendered you a statement of the Kosmak-Mellinger account on July 13th we included in the same this item of $887.67, as we naturally presumed that you intended to apply these return premiums on the Kosmak-Mellinger bal-

ance, as you distinctly stated on the account which we received that the cancellations were in behalf of Kosmak-Mellinger Company Incorporated; consequently, inasmuch as these return premiums have been allowed on the Kosmak-Mellinger account, they could not be allowed in the account of your own office, and we therefore figure that, after applying your remittance of $2,538.61 against the corrected balance of $3,482.18, there is still due us on account of your May business $943.59 —this being the first item shown in the statement which we are inclosing to you.

"The next item with which we have charged you is reinsurance of $770.31, as per statement rendered you on July 23d, at which time a letter was addressed to you explaining how this amount was arrived at. This is made up largely of reinsurance cancellations for which the certificates were mailed to your office, although there may have been a few items of reinsurance premiums. Abstracts of all of these items are on file here and duplicates are in your office. Your June account showed a balance of $1,660.37, but your cash remittance, together with expense vouchers, was for $1,625.25, leaving a balance on June of $35.12. Your June balance, according to the statement rendered, was $1,625.12, but there were numerous items which altered the balance somewhat, and we inclose a statement showing just what these changes are, which increases your balance to the figures we have indicated.

"On your July account we find that there is a balance due you of 70 cents, inasmuch as the balance which you showed was $1,035.-72, but, after making numerous corrections, as per statement enclosed you herewith, we find the balance to be $1,035.02. Your remittance was based on the balance shown by you, consequently you are 70 cents overpaid for July. We find that you did not include in your account for July reinsurance amounting to $30.61, a statement of which was sent to you at the time. Perhaps you have mislaid this reinsurance statement, so we are sending you a copy of the same at this time.

"Your August account is correct at $3,065.05, instead of $2,963.35, as rendered by you. A statement showing corrections, which alters the balance, is inclosed to you herewith, and we wish that you would remit according to the corrected amount. We also inclose a statement of August reinsurance, showing a balance due the Central National of $64.88.

"Your September account, according to the corrected figures, is $774.17, instead of $336.02. A statement of these corrections is inclosed to you herewith, and we ask you to remit in accordance with the proper figure. We also find that there is a balance due Ballard-Greene-Smith Corporation on account of September reinsurance of $178.09, and we inclose herewith statement showing how this amount is arrived at.

"A summary of all of the above is inclosed to you at this time, showing the balance of $5,504.92. We would like very much to have you remit this amount, together with the Kosmak-Mellinger balance of $2,408.67, at once, so that we may have this account in acceptable shape to the insurance departments. We are quite willing to go over any of these statements with you, and to make any changes or corrections which might develop as being necessary; our desire at this time being to have the account paid up to October 1st, so that it will meet with the insurance department's requirements.

"We might also state that the Kosmak-Mellinger account should have been taken care of some time ago, and at this time your August balance is about two weeks past due. Will you kindly co-operate with us in the above matter, and, awaiting receipt of your remittance in very early mail, we remain,

"Yours very truly,
"A. H. Watson, Asst. Secretary."

On October 21, 1920, it notified the corporation of the cancellation of the contract for the reason stated in the letter, which is as follows:

"October 21, 1920.

"Ballard-Greene-Smith Corporation, 51 Maiden Lane, New York City, N. Y.—Gentlemen: This is to advise you that the executive committee, in its meeting on the 14th inst., did by resolution offered and adopted at said meeting instruct that the existing contract with Ballard-Greene-Smith Corporation be terminated, and that the 60 days' notice of cancellation be given as provided by its terms. You will therefore please accept this as formal notice of the termination of your general agency contract with the Central National Fire Insurance Company, dated the 15th day of May, 1920. The cause for the cancellation of this contract must be very patent to you. The Central National's management has its own views as to what constitutes good underwriting practices for a new company in a new field. Your views along these lines, as evidenced by your letters, do not seem to be at all in accord with the views of the home office management, and as your agents frequently go outside of instructions and bind the Central National for excess lines and on classes prohibited in instructions under which you are working, and as the company is frequently bound for days and sometimes weeks under binders and policies that are afterwards returned to this office canceled flat, under which binders and policies the company had an uncompensated liability, and under which, if losses occurred while policies were out, the company would undoubtedly have been called upon to pay.

"These are only a few of the many and cogent reasons why the Central National is withdrawing from the Eastern field. We wish to say, in terminating our contract with Ballard-Greene-Smith Corporation, we have no intention at this time of making any other general agency connection for the Eastern field. The termination of your general agency contract simply means that the Central National has decided to retire from and remain out of the Eastern field for the present. With your own company, the Port of New York, available to you, you can undoubtedly use the Central National's agency organization to your advantage and profit.

"I remain yours very truly,
"Geo. J. Delmege, President."

[2] The stipulation in the bond, "that the obligee [the plaintiff] upon learning of any fact which may be a basis of any claim hereunder, written notice thereof shall be mailed to the surety at its office at No. 60 John street, New York City, New York, within thirty days after so learning of any such act," is clear and free from any ambiguity. The most favorable construction the plaintiff could ask is that it be construed as policies of insurance are, which is that they must be enforced as any other contract. It is only when a provision of a bond by a surety or insurance company is ambiguous and subject to two different constructions that it will be construed against the Surety Company. Liverpool, etc., Insurance Co. v. Kearney, 180 U. S. 132, 135, 136, 21 S. Ct. 326, 45 L. Ed. 460; National Surety Co. v. Long, 125 F. 887, 889, 60 C. C. A. 623; U. S. Fidelity & Guaranty Co. v. Rice, 148 F. 206, 78 C. C. A. 164.

In the Liverpool, London & Globe Insurance Company Case, supra, the court held: "But the rules established for the construction of written instruments apply to contracts of insurance equally with other contracts. * * * To the general rule there is an apparent exception in the case of con-

tracts of insurance, namely, that, where a policy of insurance is so framed as to leave room for two constructions, the words used should be interpreted most strongly against the insurer."

In National Surety Co. v. Long, supra, this court, said: "The care or negligence with which an obligor, who fails, seeks to perform his contract, is no defense to an action for damages for his failure. The only test of the right to recover in such an action is the existence of the breach of the covenant. It is no answer to an action for a failure to pay a promissory note that the maker, although he paid no part of it, exercised all the care to pay it that a person of ordinary prudence in similar circumstances would have used. It is no defense to an action for the breach of a contract that, although the obligor failed to perform it, yet he exercised ordinary care to do so. The very purpose of a promise or of a covenant is to relieve the obligee of all inquiry relative to the care or negligence with which the obligor acts in its fulfillment, and to impose upon the latter the absolute obligation to perform it. Nothing less than full performance satisfies the undertaking. The obligation of a promise or of a covenant to pay a debt or to do an act is not to use ordinary care to comply with the terms of the agreement, but it is to perform it; and, in an action for its breach, it is not material what care the obligor used, or what negligence he was guilty of, in his endeavor to fulfill it. The only question is: Did he perform his contract? Guarantee Co. v. Mechanics', etc., Co., 183 U. S. 402, 421, 422, 22 S. Ct. 124, 46 L. Ed. 253. The covenant of the plaintiff in the case under consideration was to immediately notify the surety company of any failure or inability of the contractor to construct and complete the building at the time and in the manner specified in the contract, and the question was not whether or not, although he failed to give the notice, he had exercised ordinary care to do so, but whether or not he had actually given the notice immediately upon the appearance of the known inability and failure of the contractor to perform his agreement." See, also, New Amsterdam Casualty Co. v. Farmer's Cooperative Union (C. C. A.) 2 F.(2d) 214.

The latest authority on this subject, decided by this court, is Maryland Casualty Co. v. Bank of England, 2 F.(2d) 793 (opinion filed December 5, 1924), which was also an action on a surety bond executed by a corporation. It was there held: "It is true that it is a rule of construction that ambiguities should be resolved against the drawer of an instrument and that this rule has been properly applied to insurance contracts. American Surety Co. v. Pauly, 170 U. S. 133, 144, 18 S. Ct. 552, 42 L. Ed. 977. However, this does not mean that the contract can be changed or 'refined away' by this mere rule of construction (Guarantee Co. v. Mechanics' Savings Bank & Trust Co., 183 U. S. 402, 419, 22 S. Ct. 124, 46 L. Ed. 253), nor that all other rules of contract construction must stand silent in the presence of this rule."

Upon the undisputed facts, the motion of the defendant for judgment should have been sustained, and for refusal to do so the judgment is reversed.

SANBORN, Circuit Judge (concurring). This case was decided in the court below in favor of the plaintiff and its counsel seek to sustain it here on the grounds (1) that the bond on which the suit is based is that of a paid surety, that the construction of this bond is governed by the established rule for the interpretation of contracts of insurance companies, and that that rule is, that if there is doubt about the meaning of such contracts they must be construed most favorably to the insured, and (2) that the meaning of the contract in suit is doubtful and the judgment should be for the plaintiff. I concur in the reversal of this judgment for these reasons:

First. Conceding that the contract of this surety should be construed in accordance with the rule for the interpretation of contracts of insurance companies, nevertheless that rule is not and has not been in the federal courts since the decision of the Supreme Court in 1893 in Imperial Fire Insurance Co. v. Coos County, 151 U. S. 452, 462, 463, 14 S. Ct. 379, 38 L. Ed. 231, that contracts of insurance and contracts of sureties should be treated as special classes of contracts to be interpreted by the rule that if the meaning of the agreements is in doubt the construction should be adopted that is most favorable to the assured. But the true rule for the construction of such contracts is that they ought to be interpreted like other classes of contracts according to the sense and meaning of the terms which the parties have used and those terms ought to be taken, understood and given effect in their plain, ordinary and popular sense, fairly and justly to all the parties to the contracts. Atlas Reduction Co. v. New Zealand Ins. Co., 138 F. 497, 499, 71 C. C. A. 21, 9 L. R. A. (N. S.) 433; National Surety Co. v. Western Pacific Ry. Co.,

200 F. 675, 699, 700, 119 C. C. A. 91; Dorrance v. Barber (C. C. A.) 262 F. 489, 491; Suzuki v. National Surety Co. (C. C. A.) 290 F. 942, 943; Hawkeye Commercial Men's Assn. v. Christy, 294 F. (8 C. C. A.) 208, 210, 211, 213.

Second. By the terms of the bond on which the defendant is surety it guaranteed to the plaintiff the faithful performance by the Ballard-Greene-Smith Corporation of the latter's written agency contract with the plaintiff. One of the terms of the bond reads in this way: "That the obligee, upon learning of any act which may be made the basis of any claim hereunder, written notice thereof shall be mailed to the surety at its office at No. 60 John street, New York City, N. Y., within 30 days after so learning of any such act." The agency contract provided that not later than the 15th day of each month the Ballard Company should forward to the plaintiff an account current of its agency business during the preceding month, and that not later than 75 days after the month for which such statement was sent it should forward to the plaintiff a remittance for the balance shown to be due from that statement. Such accounts current were forwarded accordingly to the plaintiff, but the remittances were not made as required by the contract. Seventy-five days after the end of May, 1920, there was $2,538.61 unpaid on the current account for that month; 75 days after the end of June, 1920, there was still due and unpaid $1,660.37 on the current account for that month; 75 days after the end of July, 1920, there was still due on the current account for that month $1,035.02. Each of these defaults of the Ballard Company, each of these failures on their part to make the respective remittances within the 75 days after the expiration of the month for which they were respectively due, was unquestionably an "act which may be made the basis of any claim" under the bond. It is these acts, these failures to remit, that constitutes the gravamen or basis of this suit. The plaintiff learned of these defaults when they occurred, and has known of them ever since. It was required by the express provision of the bond to give to the defendant written notice of each of them within 30 days after they occurred. It failed so to do, and thereby both failed to fulfill the conditions of the defendant's liability on the bond and committed the first breach thereof.