**MINNEAPOLIS–MOLINE CO. v. CHICAGO, M., ST. P. & P. R. CO.**

No. 14565.

United States Court of Appeals
Eighth Circuit.

Nov. 7, 1952.

Charles A. Bassford, Minneapolis, Minn. (Bergmann Richards, Minneapolis, Minn., and Richards, Janes, Hoker, Montgomery & Cobb, Minneapolis, Minn., on the brief), for appellant.

A. C. Erdall, Minneapolis, Minn. (S. W. Rider, Jr., J. R. Scoggin, Minneapolis, Minn., M. L. Bluhm and C. L. Taylor, Chicago, Ill., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

GARDNER, Chief Judge.

As originally instituted this was an action brought by Patrick Bath against Chicago, Milwaukee, St. Paul and Pacific Railroad Company to recover damages on account of personal injuries. Jurisdiction was based on diversity of citizenship and the requisite amount involved. Bath alleged in his complaint that the Railroad Company maintained certain railroad tracks in the vicinity of one of the Minneapolis-Moline Company plants in the city of Minneapolis, Minnesota; that on the 11th day of January, 1950, he was employed by that company and was working as a foundry helper; that the railroad company was operating an engine in a northerly direction with cars attached to the north of the engine and that it negligently, carelessly and unlawfully operated the engine and cars thereto attached in a northerly direction along its line of track adjacent to the plant of the Minneapolis-Moline Company, striking an iron box along the said track and propelling it against Bath, thereby inflicting serious personal injuries upon him.

The Railroad Company answered denying negligence and alleging contributory negligence on behalf of Bath. It then, as a third party plaintiff, filed complaint against the Minneapolis-Moline Company, alleging that Patrick Bath had filed suit against it and that on December 30, 1913, it had entered into a written contract with Minneapolis-Moline Company's predecessor in interest, by reason of which the Minneapolis-Moline Company became obligated to indemnify and save harmless the Railroad Company from all damages, remote as well as proximate, for which the Railroad Company might become, in whole or in part, liable, and that by virtue of said agreement and the covenants therein contained the Minneapolis-Moline Company agreed that if any suit should be brought against the Railroad Company for the recovery of any damages, remote as well as proximate, resulting from the performance or non-performance by said company of the track clearance provision of said contract, the Minneapolis-Moline Company would at its own expense assume and conduct the defense of such a claim and satisfy any judgment that might be rendered therein. The Railroad Company also served notice on the Minneapolis-Moline Company demanding that it defend the Bath case.

At the trial both the Railroad Company and the Minneapolis-Moline Company appeared by counsel and participated in the trial of the action and at the close of all the testimony Minneapolis-Moline Company interposed a motion for a directed verdict, as did also the Railroad Company. Both motions were denied. At the request of the Minneapolis-Moline Company the court submitted the following interrogatory to the jury: "Was plaintiff's injury in any wise the result of the presence of the trash box within six feet laterally at right angles from the nearer rail of track 4?" In connection with the question as to what should be submitted to the jury the record shows the following proceedings:

"The Court: I am not sure that we are entirely clear in our record as to what our understanding is insofar as the third party angle of this case is concerned. I gather from what Mr. Richards said that subject to his right, which he has reserved on his motion.

for a directed verdict, he recognizes that if the jury answers the question which is found in his request No. 1 in the affirmative, then it would follow there would be liability over on the part of the Minneapolis-Moline.

"Now then, is it the desire of counsel that I merely submit that question to the jury and that however it is answered that I make findings of fact and conclusions of law as to the liability of the third party defendant?

"Mr. Richards (appearing for Minneapolis-Moline): That is my idea, Your Honor."

The jury answered the interrogatory in the affirmative and returned a verdict in favor of plaintiff for $25,500. There was evidence tending to sustain the allegations of plaintiff's complaint. Judgment was entered on the verdict and that judgment has been paid by the Railroad Company.

As has been observed, the Railroad Company bases its claim for indemnity upon a certain written industrial track agreement executed by the predecessor of Minneapolis-Moline Company and confessedly binding upon that company. The contract was offered in evidence. In the sixth paragraph of the contract is the provision relied on by the Railroad Company and so far as here material reads as follows:

"Sixth: Except at the points indicated on said plat, the Steel Company shall not and hereby covenants and agrees that it will not erect, construct, have or suffer any part of any building, structure, appurtenance or appliance, or any other obstacle or projection, at a less distance than six (6) feet laterally at right angles from the nearest rails of such spur or switching tracks; * * and that it shall and will at all times indemnify and save harmless the Railway Company of, from and against any and all damages, remote as well as proximate, in anywise resulting from any non-performance or non-observance of the foregoing covenant concerning lateral distance or perpendicular height, for which the Railway Company shall become, in whole or in part, liable to be charged. Neither the Rail-

way Company's knowledge or notice of any such non-performance or non-observance, nor its failure to notify its own employees thereof, nor its continued operation of said spur tracks, shall be in anywise deemed a waiver of the foregoing covenant of indemnity, or to relieve the Steel Company therefrom, or be set up as a defense to any claim of the Railway Company thereunder, and if any suit shall be brought against the Railway Company for the recovery of any such damages, the Steel Company shall and will, upon reasonable notice in writing thereto, wholly at its own sole expense, assume and conduct to final conclusion the defense thereof, and pay and satisfy any judgment which may be rendered therein, together with all costs and incidental expenses."

As the jury found in favor of Bath, the details of the evidence need not be reproduced. Suffice it to say that it was sufficient to sustain Bath's cause of action against the Railroad Company.

In addition to the verdict of the jury and its answer to the interrogatory submitted, the court on the question of the Minneapolis-Moline Company's liability entered findings of fact and conclusions of law reciting that the third party plaintiff and third party defendant stipulated "that the court enter findings of fact, conclusions of law and order." The court found that the Railroad Company and Minneapolis-Moline Company's predecessor had entered into a written track agreement pertaining to the maintenance and use of the tracks here involved; found that the third party defendant was bound by the provisions of that contract; that the trash box referred to in the interrogatory submitted to the jury was a large wooden box with steel frame, weighing approximately 1000 pounds and that at the time in controversy it had been placed by an employee of the Minneapolis-Moline Company within six feet laterally from track No. 4; that it was an "appliance or any other obstacle" within the meaning of paragraph sixth of the contract between the parties; that on the occasion under consideration one of a string of railroad

cars being moved along track No. 4 in a northerly direction came in contact with the trash box and moved and propelled it along the track, resulting in injuries to Bath, an employee of the Minneapolis-Moline Company; that the jury had returned a verdict against the Railroad Company for injuries to the plaintiff and that the verdict and judgment constituted "damages, remote as well as proximate, in any wise resulting from any non-performance or non-observance of the foregoing covenant concerning lateral distance or perpendicular height for which the Railway Company shall become, in whole or in part, liable or be charged." The court then concluded that the Minneapolis-Moline Company under its contract of indemnity was liable to the Railroad Company for the amount of this judgment and entered judgment accordingly.

In seeking reversal appellant in effect contends: (1) that the court erred in denying its motion for a directed verdict; (2) that the court erred in denying its motion to set aside the jury's answer to interrogatory submitted and for judgment in its favor; (3) the court erred in making findings of fact to the effect that the trash box referred to had been placed by an employee of the Minneapolis-Moline Company within six feet laterally from track No. 4, and that it was an appliance or obstacle within the meaning of paragraph sixth of said contract; (4) the court erred in finding that the verdict returned constituted damages resulting from non-performance or non-observance of the sixth covenant of said contract; (5) the court erred in refusing to submit to the jury requested interrogatories 2 and 3; (6) the court erred in concluding as a matter of law that the Minneapolis-Moline Company was liable under the track agreement.

In the further discussion of the issues presented in this case we shall refer to Patrick Bath either as Bath or as plaintiff; we shall refer to Chicago, Milwaukee & St. Paul Railroad Company either as the Railroad Company or as appellee, and we shall refer to the Minneapolis-Moline Company either as the Moline Company or as appellant.

While the grounds upon which the judgment appealed from is attacked are variously stated, in the final analysis the liability of the Moline Company is dependent upon the industrial track agreement. The Railroad Company insists that the indemnity clause in that agreement as applied to the facts in this case sustains its contention that the judgment against the Moline Company is correct, while on the other hand, the Moline Company insists that under the facts it should not be held liable. Thus, in its motion for a directed verdict interposed at the close of all the evidence, the Moline Company also charged that,

"3. The so-called rubbish or trash box was not a 'building, structure, appurtenance, appliance, obstacle or projection,' as those terms are used in the contract;

"4. Any negligence on the part of the Minneapolis-Moline in placing the trash box in the position in which it was at the time it was struck by the train was not a proximate cause of the accident. * * *"

Appellee's motion to set aside the jury's answer to the interrogatory submitted again is dependent upon an indemnity clause of the contract, as are also the other assignments of error urged for reversal of the judgment. It would therefore seem to be of paramount importance to direct our attention to a consideration of this indemnity contract.

By the sixth paragraph of this contract appellee covenanted and agreed that it would not "erect, construct, have or suffer any part of any building, structure, appurtenance or appliance, or any other obstacle or projection, at a less distance than six feet laterally at right angles from the nearest rails of such spur or switching tracks." Then follows the indemnity agreement by which the Moline Company agreed to save the Railroad Company harmless from and against any and all damages, remote as well as proximate, in any wise resulting from any non-performance or non-observance of the foregoing covenant concerning lateral distance from which the Railroad Company might become

in whole or in part liable. It is then provided that,

"Neither the Railway Company's knowledge or notice of any such non-performance or non-observance, nor its failure to notify its own employees thereof, nor its continued operation of said spur tracks, shall be in any wise deemed a waiver of the foregoing covenant of indemnity."

This contract is broad enough to exempt the Railroad Company from the result of its own negligence. As the contract was not executed by the Railroad Company in its capacity as a common carrier but as the owner of property, such a contract contravenes no public policy of the State of Minnesota. Speltz Grain & Coal Co. v. Rush, Minn., 51 N.W.2d 641; Northern Pacific Ry. Co. v. Thornton Bros. Co., 206 Minn. 193, 288 N.W. 226; Michigan Millers Mutual Fire Ins. Co. v. Canadian Northern Ry. Co., 8 Cir., 152 F.2d 292; Quirk Milling Co. v. Minneapolis & St. L. R. Co., 98 Minn. 22, 107 N.W. 742. In Quirk Milling Co. v. Minneapolis & St. L. R. Co. supra, the Railway Company granted an easement to the Milling Company, with the agreement on the part of the Milling Company to indemnify the Railway Company against liability for fire escaping from the engines of the Railway Company. The fire was confessedly caused by negligence of the Railway Company but the indemnity agreement was held to be binding. In Speltz Grain & Coal Co. v. Rush, supra, the indemnity contract provided that "the risk of all loss, injury and damage by fire, however caused, and whether or not caused by the negligence of the Lessor, * * *, being hereby assumed by the Lessee, who * * * agrees to indemnify and save harmless the Lessor from all liability for damage by fire, however the fire may originate, the risk of which is assumed as aforesaid". The court sustained the contract protecting the Railway Company from all loss or damage by fire however caused.

In Northern Pacific Ry. Co. v. Thornton Bros. Co., supra, [206 Minn. 193, 288 N.W. 228], the Supreme Court of Minnesota, in the course of its opinion, said:

"Neither law nor public policy prevents the ordinary contractor from buying from a third party indemnity from the pecuniary result of his own negligence. That is legitimate as insurance. How does the same process, with identical result, become illicit simply because they are those of the original and basic contract rather than a collateral one for conventional insurance?

* * * * * *

"* * * The condition of the bond speaks of 'loss of or damage to property.' Such loss or damage, to be within the bond, must arise 'in any manner out of or in any manner connected with the said work.' That is general and inclusive verbiage, not to be limited by arbitrary, strict construction, resort to which we decline for the reason first above stated. It is perfectly obvious that the Donlin pile driver was engaged in the 'work', and that in a practical manner the damage arose out of or at least was connected with the work."

The case of Michigan Millers Mutual Fire Ins. Co. v. Canadian Northern Ry. Co., supra [152 F.2d 296], arose in Minnesota and was determined by the Minnesota law. In the course of the opinion in that case we said:

"The Railway Company in making a contract as to property located on its right of way acts in a private capacity and not as a common carrier, and in such capacity it owes no duty to the public to exercise care, and may exact its own conditions as to occupancy."

Having reached the conclusion that the contract was a legitimate one, we are required to consider whether the damage here is within the coverage of the indemnity clause of that contract. The personal injuries suffered by the plaintiff were caused by the act of the Moline Company in placing and in permitting the trash box to remain too close to the track, coupled with the negligence of the Railroad Company, the latter having been determined by the jury. The placing of this trash box

was in ~~the~~ violation of the terms of the indemnity contract. It is, however, urged that this indemnity provision embodied in paragraph sixth of the contract must be read in connection with paragraph fifth of the contract and that it was so modified thereby. It should first be observed that paragraph fifth has to do with an entirely different subject. By paragraph fourth, the Railroad Company granted appellant's predecessor the right to operate "a locomotive crane" upon the tracks here involved, such operation to be at all times under the direction of the superintendent of the Railroad Company. Then by the fifth paragraph the Railroad Company was released and indemnified against all claims for loss and damage to property "except the property of the Railway Company, at any time situated upon the premises owned or occupied by the Steel Company, which may result from or be caused by fire negligently set by the Railway Company, and from and against injury to or death of persons which may be caused by the operation or movement of said locomotive crane upon any of the tracks embraced in this contract, but not from or against any such injury to or death of persons which may be caused by any negligent condition or operation of the Railway Company's engine or cars upon any of said tracks." It thus appears that this part of the contract has reference only to the rules governing the operation of the locomotive crane. This had nothing to do with the ordinary operation of the Railroad Company's trains or with any switching movements made under the direction of its switching crew; neither had it anything to do with the question of structures or obstacles maintained too close to the track, but had reference to an entirely different situation. By statute, Minn.Stat. Ann. § 219.46 the Railroad Company was forbidden to build or maintain any structure or obstruction within six feet of its tracks and in turn it by contract forbade the Moline Company from constructing or maintaining any structure, appliance or obstacle within that distance. The contract, we think, is broader than the statute although it deals with the same subject. The sixth paragraph is an independent covenant

in no way related to or limited by the fifth paragraph.

■ If this indemnity contract is the subject of construction it should be construed in the same manner as any other similar contract. But it is only where ambiguity exists that courts are required to resort to construction, and where the language is plain and unambiguous the contract must be enforced as written, as courts are not permitted to write contracts for the parties. Northern Pacific Ry. Co. v. Thornton Bros. Co., supra; Rock-Ola Mfg. Corp. v. Filben Mfg. Co., 8 Cir., 168 F.2d 919; Andrews v. St. Louis Joint Stock Land Bank, 8 Cir., 107 F.2d 462; Amsterdam Syndicate v. Fuller, 8 Cir., 154 F.2d 342; E. I. Du Pont De Nemours & Co. v. Claiborne-Reno Co., 8 Cir., 64 F.2d 224, 89 A.L.R. 238; Gulf Refining Co. v. Home Indemnity Co., 8 Cir., 78 F.2d 842; New Amsterdam Casualty Co. v. Central Nat. Fire Ins. Co., 8 Cir., 4 F.2d 203; Ocean Accident & Guarantee Corp. v. Penick & Ford, 8 Cir., 101 F.2d 493; Sulzbacher v. Travelers Ins. Co., 8 Cir., 137 F.2d 386.

In Andrews v. St. Louis Joint Stock Land Bank, supra [107 F.2d 467], we quoted with approval from the decision in Pitcairn v. American Refrigerator Transit Co., 8 Cir., 101 F.2d 929, as follows:

> " 'Of course, if this contract is clear, certain and definite, its terms must be accepted without reference to any rules of interpretation. Courts have no right to make a contract for the parties that is different from that actually entered into by them.' "

In New Amsterdam Casualty Co. v. Central Nat. Fire Ins. Co., supra [4 F.2d 207], it is among other things said:

> "The most favorable construction the plaintiff could ask is that it be construed as policies of insurance are, which is that they must be enforced as any other contract. It is only when a provision of a bond by a surety or insurance company is ambiguous and subject to two different constructions that it will be construed against the Surety Company."

As the language of the indemnity provision is clear and all-comprehensive, it can not be read out of the contract by construction or otherwise.

■ It is urged that the injuries suffered by plaintiff were not the proximate result of the negligence of the Moline Company in placing this trash box within six feet of the railway tracks. The Railroad Company's cause of action against the Moline Company, however, is not primarily based upon tort, nor is it dependent upon negligence. The liability of the Moline Company arises from its breach of this indemnity provision of the contract. The rule as to proximate cause is not available to the Moline Company because by its contract it agreed to indemnify against loss "from and against any and all damages, remote as well as proximate, in any wise resulting from any non-performance or non-observance of the foregoing covenant concerning lateral distance or perpendicular height, for which the Railway Company shall become, *in whole or in part,* liable or be charged." The jury, in answer to an interrogatory proposed by appellant, found that plaintiff's injuries resulted in whole or in part from "the presence of the trash box within six feet laterally at right angles from the nearer rail of track 4." It thus appears that the damages from which the appellant agreed to hold the Railroad Company harmless need not have been caused solely by any negligence on its part, nor was the act of the Moline Company required to be the proximate cause of the loss. A liability resulted even though such act were the remote cause.

The case of John P. Gorman Coal Co. v. Louisville & N. R. Co., 213 Ky. 551, 281 S.W. 487, is strikingly similar in its facts to the case at bar. In that case the Coal Company agreed to maintain and keep the tracks free from obstructions and to hold the Railroad harmless on account of any loss arising from a violation of the provision. In the course of the opinion it is said:

"The obligation to keep the tracks free from obstruction, and to hold the appellee harmless from any claims on account of any failure on appellant's part to so keep the tracks, is an absolute one. Appellant might have made it a condition of liability that it should be guilty of some negligence, but this it did not do. It was free to make any contract it chose so long as it was not against public policy, and, having chosen to undertake an absolute liability rather than a qualified one, it cannot now be heard to complain of the choice it made."

In the instant case a trash box four feet in height, four feet in length, and four feet in width, weighing approximately 1000 pounds, was placed too close to the track and as a result plaintiff, an employee of the Moline Company, was injured. Placing and maintaining this trash box too near the track was at least the remote cause of plaintiff's injuries, and hence, the injuries were caused in whole or in part by the act of the Moline Company.

■ It is, however, urged that this trash box was not a structure such as was contemplated by the terms of this contract. The contract does not limit the objects that might interfere with the proper operation of the Railroad Company's trains to permanent structures. It includes appliances or obstacles, and this trash box, situated as it was, was certainly such an appliance or obstacle. It is further urged by appellant that the Railroad Company hindered or obstructed appellant in keeping or observing the covenants of the track agreement because it is said that there was preparation to remove the obstacle. Whether or not there was such a movement on foot is a matter of dispute in the evidence. In so placing this obstacle, the Moline Company was as a matter of law negligent, but whether or not negligent in so doing, it violated this provision of the indemnity agreement. Neither is there any force in the argument that the contract provisions are not applicable because certain employees of the Railroad Company knew of the presence of the trash box and notwithstanding that knowledge it undertook to pass the cars along the track. The contract, however, specifically provides that neither knowledge nor notice of any non-performance or non-observance of the contract by

the Moline Company "shall in any wise constitute a waiver of the covenant of indemnity." The trash box was, when empty, placed within three or four feet of the track by employees of the Moline Company. This violated the clearance provision of the contract and was at least a remote cause of plaintiff's injuries.

The judgment appealed from is therefore affirmed.