STATE ex rel. RAILROAD AND WAREHOUSE COMMISSION v. W. W. CARGILL COMPANY.

July 3, 1899.

Nos. 11,521—(22).

### Grain Warehouse for Owner's Grain—Laws 1895, c. 148, Applicable—License.

The defendant operates a grain warehouse, in a village in this state, in which no grain is stored but defendant's own, which it purchases of the farmers at the warehouse where the grain is so delivered, and where it is weighed and graded by defendant on its own scales and with its own appliances. *Held*, the business so carried on is of such a public character, and sufficiently affected with a public interest, that the legislature may require persons operating such warehouse to take out a license therefor as provided in Laws 1895, c. 148.

Action in the district court for Ramsey county to restrain defendant from operating its elevator in receiving, shipping, storing or

handling grain until it should have been licensed by relator. The case was tried before Bunn, J., who found in favor of defendant; and from a judgment entered pursuant to the findings, relator appealed. Reversed.

*H. W. Childs*, Attorney General, for appellant.

*Koon, Whelan & Bennett*, for respondent.

The rules for interpretation and construction of statutes are the same in equity as at law. Fonb. 22, note h. By the act in question the legislature intended to place under supervision of the commission all nonterminal grain elevators, belonging to private corporations or individuals, on any railroad right of way or land of a railway company, to be used in connection with its line, whether operated wholly or in part for the public, for or without hire, or solely for use and benefit of the owner or possessor. See Markby, Ele. Law, § 72; Potter's Dwarris, St. & Const. 193. Statutes of this nature which have been held constitutional have been statutes regulating the receiving, shipping, handling and storing of grain for the public for compensation, and enacted as police regulations. Munn v. Illinois, 94 U. S. 113; Munn v. People, 69 Ill. 80; Wabash, St. L. & Pac. Ry. Co. v. Illinois, 118 U. S. 557, 569; Budd v. New York, 143 U. S. 517; People v. Budd, 117 N. Y. 1; Brass v. North Dakota, 153 U. S. 391; Granger Cases, 94 U. S. 155; Rippe v. Becker, 56 Minn. 100; Gurney v. Minneapolis U. Ele. Co., 63 Minn. 70; Stewart v. Great N. Ry. Co., 65 Minn. 515. The police power is not coterminous with the whole end and object of government, or identical with sovereignty, and is to be distinguished from the power of government to provide for the general welfare. Tiedeman, Pol. Pow. § 1; Cooley, Const. Lim. 706; Com. v. Alger, 7 Cush. 53; State v. Noyes, 47 Me. 189; Town v. Rose Hill, 70 Ill. 191; Head v. Amoskeag Mnfg. Co., 113 U. S. 9, 21; Wurts v. Hoagland, 114 U. S. 606; Tillman v. Kircher, 64 Ind. 104; Passenger Cases, 7 How. 283; License Cases, 5 How. 504; 7 Bluntschli, Mod. St. 542, 276, 280; 2 Hare, Const. Law, 907, 908. The act is not within the police power, and is an arbitrary limitation on the rights of personal liberty and private property. Rippe v. Becker, supra; Stewart v. Great N. Ry.

Co., supra; Brass v. North Dakota, supra; State v. Corbett, 57 Minn. 345; State v. Donaldson, 41 Minn. 74; State v. Chicago, M. & St. P. Ry. Co., 68 Minn. 381; Hennington v. Georgia, 163 U. S. 299; Plessy v. Ferguson, 163 U. S. 537; Mugler v. Kansas, 123 U. S. 623; In re Jacobs, 98 N. Y. 98; Smyth v. Ames, 169 U. S. 466.   The act violates Const. (U. S.) art. 1, § 8, giving congress power to regulate foreign and interstate commerce.   U. S. v. Knight Co., 156 U. S. 1, 13; County of Mobile v. Kimball, 102 U. S. 691, 702; Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196; Kidd v. Pearson, 128 U. S. 1.

CANTY, J.

Since April, 1894, the defendant has been operating a warehouse at Lanesboro, Minnesota, used by it for storing grain therein, but has never obtained from the state railroad and warehouse commission, pursuant to Laws 1895, c. 148, a license authorizing it to ship, store, or handle grain in such warehouse; and this is an action brought to enjoin defendant from so operating the same without a license.   On the trial the court found for defendant, and plaintiff appeals from the judgment entered accordingly.

The defendant has never stored in this elevator any grain except its own, which it had bought of the farmers at the warehouse, and which was raised in this state, presumably in the vicinity of Lanesboro.   The court below held that, as applied to such a case, said chapter 148 is unconstitutional; that this is a private warehouse, in which no grain was ever stored for others or for the public; and that, therefore, it was not affected with a public interest, and the state had no right to interfere, or regulate the manner of its use. This is also the position taken by respondent.

If the business carried on at this warehouse consisted of nothing more than storing defendant's own grain, we would concede that such business would warrant but little interference or regulation of it by the state.   But that business does consist of something more. It was conceded on the argument, and is fairly to be inferred from the findings and stipulation of facts, that the grain is purchased, weighed, graded, and delivered at the warehouse, and that defendant, with its own scales and appliances, weighs and grades the grain.   Under these circumstances, the warehouse is a sort of

77 M.—15

public market place, where the farmers come with their grain for the purpose of selling the same, and where the purchaser, a party in interest, acts as market master, weigh master, inspector, and grader of the grain. Surely such a business is of a public character, and is sufficiently affected with a public interest to warrant a very considerable amount of regulation of it by the state. The business carried on by defendant at its warehouse is similar to that carried on at a large number of other warehouses and elevators in this state. The grain crops of this state constitute by far the most important part of its commerce, and its greatest resource. It is important to see that correct weights are had; that uniform grades are given; that the proper amount of dockage, and no more, is taken; that no dishonest practices are allowed, and no undue advantage is permitted to be taken.

Said chapter 148 requires the person operating such an elevator or warehouse to procure a license, to be issued by the state railroad and warehouse commission, for which a fee of one dollar per year must be paid. The act also provides that such license may be revoked by the commission if the warehouse or elevator is operated in violation or in disregard of the laws of this state. Section 2 provides that any person attempting to run such an elevator or warehouse without a license may be enjoined in a suit for that purpose. Section 3 provides that the commission may make suitable and necessary rules and regulations for the government of public country warehouses and elevators. Then follow other provisions. There are undoubtedly many provisions in the act which apply only to warehouses and elevators in which grain is stored for others or for the public, which provisions do not and cannot apply to such warehouses as the one here in question. There are, perhaps, provisions in the act which it would be unconstitutional to apply to such a warehouse as this. But these matters need not be considered at this time. The provision requiring a license is not one of these. This disposes of the only question argued which it is necessary to consider.

Judgment reversed, and a new trial granted.

MITCHELL, J. (dissenting).

In view of the facts, among others, that grain is the principal agricultural product of the state, that in the purchase and sale of it there is great liability to abuses in the matter of weights and grades, and that these are usually determined by the purchaser with his own instrumentalities, I agree with the court that, although the owner of a warehouse uses it exclusively for the storage of his own grain, yet if he uses it for the purpose of buying grain from the public, thus rendering it, in effect, a public market, his business is a proper subject of police regulation by the state, to the extent of providing such rules and regulations as are reasonably necessary to secure to the public just and correct weights and grades. The requirement of a license may be a reasonable regulation in such cases, as a means of enabling state officials to ascertain who are engaged in the business. In my opinion, this is the extent of the police power of the state in such cases. But in the act in question (Laws 1895, c. 148) the legislature have not proceeded on any such principle. They have declared all elevators and warehouses falling within the purview of the act, whether used for the storage of grain for others or not, to be public elevators, and subject to all the provisions of the act. These provisions constitute a system of rules and regulations, the different parts of which are so connected with, and dependent upon, each other, that it is in many instances impossible to separate them. Many of them are wholly inapplicable to warehouses not used for the storage of grain for others. The opinion of the court concedes this. Some of them are, in my judgment, clearly not within the police power of the state, as applied to warehouses not used for the storage of grain for others. As illustrating that the system of rules and regulations contained in the act was intended as a unit, applicable to all warehouses within the purview of the act, the fourth section, as I construe it, makes it compulsory on the owner of any such warehouse to engage in the business of storing grain for others,—a thing which is not within the police power of the state, unless the fact that the warehouse happens to be situated on land acquired by a railway company for right of way or for railway purposes in con-

nection with one of its stations or sidings gives the state that power,—a question not considered by the court.

As I understand the opinion of the majority, they propose to cut down the application of the act to warehouses not used for the storage of grain for others than the owner, to such parts of the act as are applicable and appropriate to such business, and to that extent hold it valid. In view of the connection and interdependency of the different provisions of the act, this will be a difficult if not an impossible thing to do. It would be a most unreasonable task to impose upon every owner of a warehouse used exclusively for the storage of his own grain bought from the public to determine what provisions or parts of provisions are applicable to his business. He can only know this with any certainty after the courts have, by a gradual process of exclusion and inclusion, decided all doubtful questions on the subject. It is possible that upon other points, not raised or presented, a different result might be arrived at; but, considering the case exclusively upon the lines followed by the majority of the court, I am of the opinion that the whole act should be held invalid as to warehouses not used for the storage of grain for others, and let the legislature hereafter pass an act containing provisions appropriate to that class of warehouses. The fact that the act applies only to elevators and warehouses on railroad right of way, depot grounds, or land acquired by a railroad company for railroad purposes at one of its stations or sidings, may suggest the question whether it is "class legislation"; but, as no such point has been raised, I have not considered it.