COMMERCIAL UNION ASSURANCE COMPANY, LIMITED, AND OTHERS v. FOLEY BROTHERS AND ANOTHER.[1]

December 20, 1918.

No. 21,032.

**Lease — landlord's exemption from liability for loss from fire — negligence.**

1. A stipulation in a lease of a building for commercial purposes exempting the lessor from liability for loss or injury to the goods of the lessee occasioned by a fire "howsoever coming upon or being within" the leased premises, construed and *held* to include a fire caused by the negligence of the lessor.

**Same — stipulation valid, when.**

2. A stipulation of that kind where unaffected by public interests or ˉpublic policy, and not prohibited by statute, is valid and enforceable.

Action in the district court for Ramsey county to recover $7,500 paid by plaintiff insurance companies for damage to a stock of merchandise caused by a fire negligently started by defendant companies. From an order, Brill, J., overruling plaintiffs' demurrer to a portion of defendants' answer, plaintiffs appealed. Affirmed.

*Moore, Oppenheimer & Peterson,* for appellants.

*Stringer & Seymour,* for respondents.

BROWN, C. J.

The facts in this case are substantially as follows: The Dickerman Investment Company, a corporation, was the owner of certain premises situated in the city of St. Paul, and known as 228-234 East Fourth street. The Dickerman Company leased the premises to the L. D. Coddon & Company, and thereafter that company occupied the premises in the wholesale clothing trade. The Dickerman Company subsequently sold and conveyed the premises to the defendant Union Depot Company, to be used by that company in connection with adjoining property owned by it in the construction of a new depot building. After demolishing

[1]Reported in 169 N. W. 793.

and removing an adjoining building, the defendant Foley Brothers, employees of the depot company, started a fire, for the purpose of burning the débris and rubbish left after the completion of the work, and the smoke and odors therefrom permeated the building occupied by the Coddon Company, and caused damage to the stock of clothing in the sum of $7,500. The stock was insured and claim for the loss and damage so suffered was made, and there was an adjustment of the same and the payment of the amount stated by the several insurance companies, plaintiffs in this action. Coddon & Company claimed that the fire causing the damage was negligently started by defendants, and that they were liable for the loss. The company assigned its right of action therefor to plaintiffs, and they in turn brought this action against defendants for the damage so claimed to have been caused.

In the lease under which Coddon & Company held possession of the building, there were two separate clauses, to be referred to more fully later in the opinion, by which it is claimed that the lessor, the Dickerman Investment Company, was released from liability for any and all damage to the lessee's stock of clothing which might be caused by fire "howsoever coming upon or being within said premises." Defendants have succeeded to all rights which the lease granted or secured to the investment company, and by their answer interposed the claimed exemption from liability in defense to the action. A demurrer to the answer, as not stating a defense, was overruled by the court below and plaintiffs appealed.

The provisions of the lease relied upon by defendants appear in separate parts thereof and are as follows:

(1) "Said L. D. Coddon & Company will make no claim against the lessor for or on account of any loss or damage sustained by water or fire howsoever coming or being within said premises."

(2) "The lessor shall not be in any way or to any extent liable for any loss or damage to any property at any time at or within said leased premises, whether occasioned by fire or water or gas which may come or be therein or from any other cause whatsoever."

It is contended by plaintiffs in support of the demurrer to the answer: (1) That the provisions of the lease quoted properly construed do not include or embrace damage or loss occasioned by a fire negligently

started by the lessor or its representatives; and (2) if construed to include the negligence of the lessor, that the provisions are contrary to public policy and void. Neither contention can be sustained.

1. In determining the question whether the stipulations of the contract include an exemption from loss occasioned by the negligence of the lessor, recourse must be had to the contract as a whole, the subject matter thereof, the general purpose the parties had in view and the natural meaning of the language used by them in expressing their intention. In that light we have no particular difficulty in sustaining the decision of the trial court to the effect that the language of the contract includes a fire occasioned by the negligence of the lessor. The authorities sustain that view in cases involving contracts where the exemption from liability is couched in general terms as in the case at bar. Hosmer v. Old Colony R. Co. 156 Mass. 506, 31 N. E. 652; Day v. Mill-Owners' Mut. Fire Ins. Co. 70 Iowa, 710, 29 N. W. 443; Buchanan & S. Lumber Co. v. East Jersey Coast Water Co. 71 N. J. Law, 350, 59 Atl. 31; Long v. Lehigh Valley R. Co. 130 Fed. 870, 65 C. C. A. 354. If that be not the proper construction of the stipulation, there would seem but little left for the contract to act upon.

Fires resulting in the injury and destruction of property spring ordinarily from negligence in some form. An intentional or incendiary fire often occurs, but generally the cause comes from the failure of some one to exercise the necessary precautions to avoid the same. A fire in a building may spring from defects in the heating plant, defects in the wiring for electric lights, defects which could have been discovered by reasonable diligence, and the danger of fires removed. If the fire complained of by plaintiff in the case at bar had arisen from a cause of that kind, clearly the exemption from liability would have covered a loss thus occasioned, even though the result was chargeable to the negligence of the lessor in leasing the premises in such defective condition. And it is equally clear that if the contract would include negligence in that respect, a question without serious doubt, the act of negligence in starting a fire outside the building, which results in damage, would also be included. No distinction can be drawn between the two situations. And as suggested, if the negligence of the lessor here complained of be excluded, little is left of the apparent purpose of the

parties in entering into the contract. The rules guiding the courts in such cases will not permit of a construction that would render the contract practically inoperative and a nullity. And we hold without further comment that the contract here involved necessarily was intended to protect the lessor from its own acts of negligence.

2. It is fairly well settled that a contract exonerating one from his acts of negligence is not invalid, unless prohibited by statute or be in contravention of sound public policy. Such contracts have frequently been upheld as to railroad corporations, where the subject matter thereof in no way involved their obligations to the public. Santa Fe Ry. Co. v. Grant Bros. 228 U. S. 177, 33 Sup. Ct. 474, 57 L. ed. 787; James Quirk Milling Co. v. Minneapolis & St. L. R. Co. 98 Minn. 22, 107 N. W. 742, 116 Am. St. 336; Hartford Fire Ins. Co. v. Chicago, M. & St. P. Ry. Co. 70 Fed. 201, 17 C. C. A. 62, 30 L.R.A. 193, 175 U. S. 91, 20 Sup. Ct. 33, 44 L. ed. 84. Counsel for appellant recognize the rule as thus laid down and applied and the authorities supporting it, but contend that a distinction should be made between a railroad company, in a lease of a part of its right of way for private purposes, and other contracting parties. We discover no substantial basis for the suggested distinction. The rule has application only to matters of ordinary private contractual relations, and not where the subject of the contract involves the public welfare or duties expressly imposed by law. In transactions free from considerations of the latter kind, no sound reason can be given for extending to the railroad company special privileges in this respect. If the railroad company may exempt itself from liability for its negligence in matters not involving its duty to the public, the same right cannot consistently be withheld from or denied to the private corporation or the individual, where the subject of the contract is equally unaffected by public interests.

One of the reasons for the rule as applied to the railroad company is that the company owes no duty to the public to exercise care with respect to buildings on its right of way, and the courts hold that it may exact its own terms in granting permission to place them there. The reasoning applies to the relation of landlord and tenant as it may exist between private corporations or individuals, for it may be said with equal force that a landlord of that character owes no duty to the

public with respect to the protection of the goods and chattels of the lessee which are brought upon the leased premises. Leases of that kind involve ordinary contractual matters in which the public welfare is not concerned, and if the railroad company in a like situation may protect itself from negligence, then the private corporation or the individual should and must be given the same right. We so hold.

The lease here in question violates no rule of public policy and is therefore valid. A large number of authorities bearing on the subject will be found cited in a note to Checkley v. Illinois Cent. R. Co. 44 L.R.A. (N.S.) 1127.

3. It seems to have been conceded in the court below, at least the trial court in its memorandum so states, that plaintiffs have succeeded to the rights of the lessees and defendants to the rights of the lessor. If this is incorrect, and it shall be shown on the trial of the action, as claimed in plaintiffs' brief in this court, that defendant Foley Brothers is not entitled to the protection of the contract, nothing in this opinion should be construed as holding to the contrary. Nor have we considered the question of wilful or wanton misconduct on the part of defendants, or either of them, to injure plaintiff by starting the fire. The pleadings present an issue of fact as to that question.

Neither the ordinance of the city of St. Paul prohibiting the accumulation of waste material within the city, nor the general statute of the state declaring it a misdemeanor to set a fire without proper precautions to prevent the same from spreading have any application to the case. The case of Jacobus v. St. Paul & C. Ry. Co. 20 Minn. 110 (125), 18 Am. Rep. 360, is not in point. There the contract was in direct conflict with duties imposed by law and violative of public policy.

Order affirmed.