NORTHERN PACIFIC RAILWAY COMPANY v. THORNTON BROTHERS COMPANY.[1]

November 3, 1939.

No. 32,081.

[1]Reported in 288 N. W. 226.

*L. B. Da Ponte, Conrad Olson,* and *D. R. Frost,* for appellant. *Harry Weiss* and *Samuel Lipschultz,* for respondent.

STONE, JUSTICE.

Action upon a bond of indemnity, trial to the court resulting in decision for defendant. Plaintiff appeals from the order denying its alternative motion for amended findings or new trial.

In March, 1935, the Minneapolis-St. Paul Sanitary District, a municipal corporation, charged with the duty of installing and operating a treatment plant for Twin City sewage, procured from plaintiff an easement through its right of way and under certain of its tracks in St. Paul. The contract between plaintiff and the district imposed upon the latter the duty of exacting from any contractor doing work upon plaintiff's right of way a bond such as the one upon which plaintiff bases this suit.

Thereupon defendant secured from the district the general contract to build the sewer, including that portion on and under plaintiff's right of way. As required by its easement contract with plaintiff, the district exacted from defendant a bond reciting its general contract and that:

"* * * in carrying on such work the principal and its agents, servants, employes and equipment will be on, over and about the right of way and tracks of the" plaintiff.

There followed the condition of the bond in this language:

"Now, THEREFORE, if the above bounded principal shall well and truly indemnify said Railway Company against all loss of or damage to property of the Railway Company, and against any and all claims, loss, cost, damage or expense for injuries to or death of said Railway Company's employes or third persons, and for loss of or damage to the property of third persons arising in any manner out of or in any manner connected with the said

work performed by the principal, then this obligation shall be null and void, otherwise to remain in full force and effect."

In performing its contract to run the sewer under plaintiff's right of way, defendant sublet to J. E. Donlin Company an item of driving piles. The facts, as found and agreed below, are that:

While "the employes and representatives of said Donlin Company were engaged in the work of driving piles and of construction along that part of the line of said sewer that lay beneath the surface of plaintiff's tracks, and on October 1, 1935, in the afternoon of said day, a string of freight cars then being switched by a crew of plaintiff got away from the control of the crew, collided with the pile driver then being used and caused certain damage to the pile driver and equipment of the said Donlin Company."

Donlin Company sued plaintiff for the loss resulting from its negligence and recovered through the medium of a settlement, as to the wisdom and liquidating effect of which no point is made. The only question is whether the admittedly good claim of the Donlin Company, arising from the negligence of plaintiff, is within defendant's bond. We hold that it is.

██ To that conclusion no obstacle is interposed by the supposed rule of "strict construction" (see United States v. Wallace [9 Cir.] 18 F. [2d] 20) against the indemnitee of a contract wherein he has sought to relieve himself from the consequences of his own negligence. On this point the case is ruled by James Quirk Milling Co. v. M. & St. L. R. Co. 98 Minn. 22, 107 N. W. 742; Commercial U. A. Co. Ltd. v. Foley Bros. 141 Minn. 258, 169 N. W. 793; and Weirick v. Hamm Realty Co. 179 Minn. 25, 228 N. W. 175. In the Quirk Milling Co. case the defendant railroad had voluntarily granted an easement for the erection of an elevator. Part of the consideration moving to it was an undertaking to hold the railroad harmless on account of loss or damage by fire escaping from any locomotive or resulting in "any manner" from the construction or operation of the tracks of the railroad company.

That promise was in language just as general and no more special than the one now determinative. It was held to include a fire arising from the defendant's negligence. Therein was found no contravention of public policy and so no room for arbitrary construction. There, as here, the railroad company had voluntarily and without condemnation granted an easement. There, as here, the easement was created by contract, one term of which was indemnity for the railroad against liability for fire escaping from its engines. There, as here, the railroad "was under no legal obligation" to grant the easement, although the latter could have been procured by condemnation. "Having the right to refuse to make the contract, it might stipulate for exemption from damages caused by its negligence." As such a contract "in no way relieves the railway company from the discharge of any absolute duty which it owes to the public or to any citizen, it is not against public policy, and is therefore binding upon the parties." [98 Minn. 26, 27, 107 N. W. 743, 744.]

If a contract transgresses the law or contravenes public policy, it is void. If it does neither, the parties are within their rights and the contract should have not an arbitrary, that is, an unduly liberal or harshly strict, construction, but a fair construction that will accomplish its stated purpose. That is the rule we apply to statutes (State ex rel. City of St. Paul v. M. St. P. & S. S. M. Ry. Co. 190 Minn. 162, 251 N. W. 275), and we see no reason why it should not apply also in the field of contract law. Our duty is the same in both domains—to effectuate the declared purpose of the statute, if within constitutional power, and of the contract, if within the scope of lawful contractual objectives.

What has just been said may explain, as to rationale, the law as declared by the Restatement, Contracts, § 572, that:

"A bargain to indemnify another against the consequences of committing a tortious act is illegal unless the performance of the tortious act is only an undesired possibility in the performance of the bargain, and the bargain does not tend to induce the act."

Section 575 enumerates instances where exemption from consequences of negligence is illegal.[2] Cases such as this are not included. A party may properly bargain for indemnity against his own negligence where the latter "is only an undesired possibility in the performance of the bargain, and the bargain does not tend to induce the act."

Quite fanciful is the suggestion that to hold as we do is "to put a premium on negligence rather than to discourage it." See note, 23 Virginia L. Rev. 85, 86. Particularly in the field of railroads and construction contractors, the results of negligence are so onerous and, the humanities and money loss aside, so altogether annoying, that only the extreme of inexperience would harbor the thought that a contract of the instant sort would operate in the slightest degree as a premium on and so an inducement to negligence.

Neither law nor public policy prevents the ordinary contractor from buying from a third party indemnity from the pecuniary result of his own negligence. That is legitimate as insurance. How does the same process, with identical result, become illicit simply because they are those of the original and basic contract rather than a collateral one for conventional insurance? See 19 Minn. L. Rev. 471; 22 *Id.* 107.

The view just expressed is enough to show why we do not follow the cases which seem to thwart contractual intention solely upon the ground that to give literal effect thereto would relieve a contractor from the legal result of his own negligence.

■ Going now to the contract, all of which is to be considered, we find that even the "equipment" of defendant itself was intended, and it was so stated, to be, to some degree of incidence or

---

[2]They are cases where:

"(a) the parties are employer and employee and the bargain relates to negligent injury of the employee in the course of the employment, or

"(b) one of the parties is charged with a duty of public service, and the bargain relates to negligence in the performance of any part of its duty to the public, for which it has received or been promised compensation."

causation, a subject matter for the operation of its promise of indemnity. The condition of the bond speaks of "loss of or damage to property." Such loss or damage, to be within the bond, must arise "in any manner out of or in any manner connected with the said work." That is general and inclusive verbiage, not to be limited by arbitrary, strict construction, resort to which we decline for the reason first above stated. It is perfectly obvious that the Donlin pile driver was engaged in the "work," and that in a practical manner the damage arose out of or at least was connected with the work.

In order to be embraced by the condition of the bond, a claim for loss of or damage to property must be that of "third persons." Counsel have not considered that limitation of present relevance. We assume that they are correct in view of the inclusion by the recitals of the "agents, servants, employes and equipment" of defendant. Here, as in City of Cleveland v. B. & O. R. Co. (6 Cir.) 71 F. (2d) 89, 91, the "all-inclusive language" (there of "any and all damages * * * [arising] by reason of or in any way connected with the * * * construction * * *") prevents exclusion of the Donlin claim. There should be no resort to a forced construction so arbitrarily "strict" as to defeat a legitimate and expressed contractual purpose. Not only that, if we applied the contract only to acts of defendant and its agents, for which it was liable anyway, there would be but little remaining purpose of the promise of indemnity. That thought we borrow from the Cleveland case and Commercial U. A. Co. Ltd. v. Foley Bros. 141 Minn. 258, 260, 169 N. W. 793, 794. As said in the latter decision, if ours "be not the proper construction * * * there would seem but little left for the contract to act upon."

The order must be reversed with direction to amend the decision below conformably hereto and to enter judgment for plaintiff.

So ordered.