**MICHIGAN MILLERS MUT. FIRE INS. CO. et al. v. CANADIAN NORTHERN RY. CO.**

No. 1122.

District Court, D. Minnesota, Fourth Division.

Nov. 21, 1944.

Bowen & Bowen, of Minneapolis, Minn., for plaintiffs.

Gillette, Nye, Harries & Montague, of Duluth, Minn., for defendant.

NORDBYE, District Judge.

The facts necessary to the determination of this motion appear to be the following:

On or about September 23, 1941, defendant leased part of its right of way at Pitt, Minnesota, to one John P. O'Neill for a period of one year and from year to year thereafter. Pursuant to the lease, O'Neill built a warehouse on the property, and on or about October 24, 1942, he assigned all his right, title and interest in that lease and property to the Northern Farmers Cooperative Exchange. That assignment was accepted and approved by defendant in writing on October 29, 1942.

While defendant was loading grain from the warehouse into one of its freight cars on or about April 8, 1943, a fire occurred and destroyed the warehouse. This fire, according to the plaintiffs, was occasioned by defendant's employees setting fire to the grass on defendant's right of way. The fire spread and the crew which set the fire went to lunch without watching it or checking its course or protecting adjacent buildings from contact with it. It spread to the Cooperative's warehouse and destroyed it. Plaintiffs, who were the insurers of the warehouse and its contents against fire, paid the Cooperative Exchange the loss it suffered from the fire. The Cooperative, in turn, transferred to plaintiffs all its rights against defendant, and plaintiffs now bring this action as subrogees to recover $16,964.91 which they paid the insured for the loss suffered. Plaintiffs contend that the fire and the resulting loss was caused by defendant's negligent care of a fire which its employees set near the warehouse.

Defendant seeks summary judgment upon the premise that paragraph 9 of the lease granted O'Neill, and subsequently assigned to the Northern Farmers Cooperative Exchange, contained the following provision: "9. Should the use, exercise, or enjoyment by the lessee of the lands, premises, or privileges hereby demised, or any part thereof, at any time or times hereafter be obstructed, interfered with or destroyed, or should any buildings, erections or improvements, or any goods, chattels, effects, or things, at any time or times, or by any persons, built, erected, brought, placed or being thereon, be in any manner damaged, injured or destroyed, whether by reason of or in consequence of any repairs, improvements, enlargements, or reconstruction of the lessor's railway or of any works or facilities connected therewith, or on account of the operation, working or maintenance of the railway, the running of trains, or any other cause, matter or thing done. or omitted to be done, negligently or otherwise, by the lessor, or its agents, the lessee shall not by reason thereof have any claim or demand against the lessor, or such agents, nor be entitled to any compensation or indemnity."

Defendant contends that this provision is valid and operative, and relies upon Quirk Milling Co. v. Minneapolis & St. L. R. R. Co., 1906, 98 Minn. 22, 107 N.W. 742, 116 Am.St.Rep. 336; Millers Nat. Ins. Co. v. Minneapolis, St. P. & S. S. M. Ry. Co., 1916, 132 Minn. 151, 156 N.W. 117; and Commercial Union Assurance Co. v. Foley Bros., 1918, 141 Minn. 258, 169 N.W. 793. These cases all hold that agreements against liability resulting from the negligent acts of the contractor or his agents are valid unless prohibited by statute or sound public policy. Plaintiffs, in effect, contend that paragraph 9 is not enforcible herein. They contend that (1) the negligence in the instant case occurred in defendant's capacity as a common carrier; (2) that the lease was made by defendant in its capacity as a common carrier; (3) that the warehouse was a public one and therefore the contract is contrary to public policy; and (4) that the consideration for the lease is illegal in part and therefore the whole contract is vitiated. Thus, the soundness of the rules and cases cited by defendant or their binding effect upon this Court is not questioned by plaintiffs. The first three defenses appear to go solely to the application of plaintiffs' proposed rule. The fourth goes to the validity of the lease. Therefore, consideration of plaintiffs' position would seem to determine the disposition of this motion. Plaintiffs' contentions will be considered in the above order.

I. As plaintiffs claim, a common carrier and the owner of goods received by it as a common carrier cannot validly contract against liability arising from negligent acts committed against that property by the carrier. Quirk Milling Co. v. Minneapolis & St. L. R. R. Co., 1906, 98 Minn. 22, 107 N.W. 742, 116 Am.St.Rep. 336; Hartford Fire Ins. Co. v. Chicago, M. & St. P. Ry. Co., 175 U.S. 91, 20 S.Ct. 33, 44 L.Ed. 84. Consequently, if defendant commits negligent acts in such a capacity, paragraph 9 of the lease cannot be operative validly here. But, on the other hand, "This rule has no application when a railroad company is acting outside the performance of its duty as a common carrier." Santa

Fe P. & P. Ry. Co. v. Grant Bros. Const. Co., 1913, 228 U.S. 177, 33 S.Ct. 474, 477, 57 L.Ed. 787. The reason is that, generally speaking, a common carrier has an absolute liability towards the goods which it receives as a common carrier, and this liability is of such a public nature that contracts against it are not permitted. New York Cent. Railroad Co. v. Lockwood, 1873, 84 U.S. 357, 19 Wall. 357, 21 L.Ed. 627; see also Quirk Milling Co. v. M. & St. L. R. R. Co., supra, 98 Minn, at page 27, 107 N.W. 742, 116 Am.St.Rep. 336.

The facts in the instant case seem to show clearly that defendant did not set the fire as a common carrier. According to plaintiffs, a grass fire set by defendant's employees spread and set fire to the warehouse and grain in question. The crew which set the fire was not the one which was concerned with the loading of the car spotted adjacent to the warehouse.

As many courts have noted, a railroad's activities are not all performed in a common carrier capacity. Former Chief Justice Hughes pointed out in Santa Fe, Prescott & Phoenix Ry. Co. v. Grant Bros. Const. Co., 1913, 228 U.S. 177, 33 S. Ct. 474, 57 L.Ed. 787, that "In constructing, improving, or repairing its road, and in building its extensions and branches, the railroad company is providing facilities for its service as a common carrier, but, of course, is not acting as such."

In the instant case, defendant's employees which "burned over" the property were engaged in maintenance work. That work is no different in principle from repairing or improving the road. Both are concerned with the task of making the railroad usable and in keeping it in good physical shape. Consequently it seems that the employees which set the fire in question were not acting in defendant's capacity as a common carrier in performing that work. Moreover, it cannot be successfully maintained that defendant is liable as a common carrier by reason of alleged failure of the train crew to guard the warehouse and grain therein from the fire set by the maintenance crew. It may be urged that the complaint is sufficiently broad literally to encompass that theory of negligence. But no claim is made for any loss of grain which may have been in the car which was being loaded. Plaintiffs are seeking recovery for the loss of the warehouse and its contents. Obviously, the warehouse or its contents was not in the possession of the defendant as a common carrier for transportation. It is well settled that the liability of a common carrier as an insurer of goods does not arise until the goods have been delivered to it for transportation. 13 C.J.S. Carriers, § 145, p. 285. Until that time, the carrier is not a common carrier of such goods. 13 C.J.S., Carriers, § 142, p. 282. Any claim, therefore, by the plaintiffs on such a theory is plainly untenable.

II. Plaintiffs base their contention that defendant contracted as a common carrier upon the premise that one of the provisions in the lease provided (paragraph 7): "During the continuation of this lease, so far as the lessee can legally control the same, all freight shipped to or from the premises hereby demised, coming from or destined to any point reached by the lessor's railway, or its connections, shall be routed for the greatest possible distance over the National Railway System."

Plaintiffs claim that this provision proves that defendant contracted in its capacity as a common carrier. Assuming that such a situation would prevent defendant from contracting against its own negligence, it seems clear that defendant did not execute this contract in its role of common carrier. Nothing in the ·instrument, except this paragraph, says anything about the transportation of goods. The rest of the instrument deals with the leasing of the property and the terms upon which it is leased. The mere fact that defendant sought to improve its business by these provisions in the lease does not make defendant's contract one entered into in its capacity as a common carrier. Long ago the Iowa court held in Griswold v. Illinois Central R. Co., 90 Iowa 265, 57 N.W. 843, 846, 24 L.R.A. 647, that: "It is undoubtedly true that the ultimate purpose of the defendant in entering into this contract was the promotion of its business as a common carrier. But the contract is not for the carriage of persons or property. That the ultimate purpose was to increase its business as a carrier does not make this a contract for carriage any more than would be the employment of workmen in its shops, warehouses, or elsewhere apart from the operation of the road." If plaintiffs' argument were accepted and applied, it seems obvious that the railroad, as a practical matter, could never contract in any capacity but its common carrier capacity. For every contract and

action of a railroad obviously is designed directly or indirectly to strengthen the company and bolster its transportation business. This instrument was a lease, not a contract, for carriage of property.

In view of these premises, therefore, it seems that plaintiffs cannot succeed in their argument that defendant contracted in its capacity as a common carrier when executing this lease.

III. The question as to whether the contract, as reflected in paragraph 9 of the lease, contravenes public policy and therefore is unenforcible, seems to have been set at rest by the decisions of this State. At the outset, it must be concluded, as plaintiffs contend, that the warehouse was a public one at the time it was occupied under the lease by the Cooperative Exchange. True, O'Neill operated as a private warehouseman and the lease at its inception was a contract with a private warehouseman. But when the lease was assigned to the Cooperative Exchange, a new lease in effect was created, and from the showing herein it will be assumed that defendant knew, or should have known, that the Cooperative intended to operate as a public warehouse. The fact is that the Cooperative did operate as a public warehouse. Contracts against liability for negligent injury to property are invalid if they are prohibted by a statute or are in contravention of sound public policy. No statute is cited which prohibits the present contract. Public policy is violated in such a provision when "the subject of the contract involves the public welfare or duties expressly imposed by law." Commercial Union Assur. Co. v. Foley Bros., 141 Minn. 258, 261, 169 N.W. 793, 794. It is of controlling significance herein that the parties have stipulated that, at the time of the fire, "Northern Farmers Cooperative Exchange * * * was the owner of said elevator and warehouse building and the contents thereof, including the grain stored therein." The rights of anyone besides the lessee herein against the defendant by reason of the fire are not before this Court. We have no members of the public who may have been bailors of grain in the warehouse, and, as such, might have claims by reason of such loss. In fact, paragraph 9 of the lease does not presume to negate any rights other than that of the lessee. This paragraph specifically limits the negation of claims as follows: " * * * the lessee shall not by reason thereof have any claim or demand against the lessor, or such agents, nor be entitled to any compensation. or indemnity."

It seems very clear, therefore, that the rights of the public are in no way limited, impaired or prejudiced by any of the provisions of the lease. At least, on the facts herein, the interest of the public or any duty of the warehouseman to the public is in no way affected by the limitation of the rights which are imposed on the lessee. Merely because a warehouse is licensed as a public one does not mean that it stores grain owned by other persons. See State v. W. W. Cargill Co., 1899, 77 Minn. 223, 79 N.W. 962. The factual situation, therefore, cannot be differentiated from the Quirk Milling Company case, supra, where the court stated with respect to the contract against the railroad's negligence in that case (at page 27 of 98 Minn., at page 744 of 107 N.W.): "As the contract in no way relieves the railway company from the discharge of any absolute duty which it owes to the public or to any citizen, it is not against public policy, and is therefore binding upon the parties."

The Cooperative Exchange chose to enter into a private contract with the defendant. It understood that, in accepting that contract, it released the lessor from any liability if the warehouse or its contents were destroyed by fire through the lessor's negligence. It could have proceeded under the Minnesota Statutes of 1941, Chapter 230, and obtained a lease to the property according to statutory condemnation procedure. It seems, therefore, that it was fully able to protect itself from any onerous provisions in the lease if it was so inclined. No legal obligation rested upon the defendant to grant any lease or rights to the property in absence of statutory procedure. As stated by the Supreme Court in Baltimore & Ohio S. W. Ry. Co. v. Voight, 176 U.S. 498, 505, 20 S.Ct. 385, 387, "It must not be forgotten that the right of private contract is no small part of the liberty of the citizen, and that the usual and most important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appear that they contravene public right or the public welfare."

Plaintiffs have the burden of proving that paragraph 9 of the lease is contrary to public policy. On this motion, they have

failed to indicate that there is any genuine issue as to any material fact on this question.

IV. Lastly, it is the position of the plaintiffs that the entire contract is void because the consideration in part is illegal. In support of this position, reference is made to paragraph 7 of the lease which purports to require the lessee during the continuation thereof, so far as it can legally control the same, to route all freight shipped to and from the premises over the lines of the lessor. It is plaintiffs' position that such provision violates the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., as well as the Elkins Act, 49 U.S.C.A. § 41 et seq., which make it unlawful for any person to offer, grant, or give, or to solicit, accept, or receive, any rebate, concession, or discrimination in respect to the transportation of property in interstate commerce by common carrier whereby such property would be transported at a rate less than published tariffs. Certainly, it is clear that the defendant and a warehouseman could not enter into a contract which would give or result in giving the warehouseman a less rate for transporting its goods than the rates contained in defendant's published tariffs. Such contracts could not be carried out either directly or indirectly. Union Pacific R. Co. v. United States, 313 U.S. 450, 61 S.Ct. 1064, 85 L.Ed. 1453; Cleveland, C. C. & S. L. R. Co. v. Hirsch, 6 Cir., 204 F. 849. The Elkins Act renders unlawful contracts which grant rebates or discriminate in favor of shippers. However, the only possible concession which was granted to the lessee as a shipper was the granting of a lease to it wherein as one of the covenants it appears that the lessee agreed to route freight shipments over the defendant's lines so far as it might be legally controlled by the lessee. The question is, therefore, Has the defendant railroad given to the lessee as a shipper by reason of this lease a grant or gift which would result in a rebate, concession, or discrimination not accorded to other shippers of like merchandise? By the lease, the railroad demised a plot of land 103 feet by 50 feet on its right of way at Pitt, Minnesota, for rental at $10 per year. There is no showing or even contention that the rental does not constitute a fair and reasonable consideration for the lease granted. In addition to such rental, the lessee was required to pay "all lawful rates, taxes and assessments" which might become payable with respect to the property during the existence of the lease. It appears that the lease was terminable upon designated notice by either party, and if within three months after termination the lessee did not remove the buildings which it had erected upon the land, such buildings became the property of the lessor. It was the lessee who was required to erect the warehouse buildings, not the lessor. The 1940 census of the Village of Pitt lists its population at approximately 25 persons. The defendant railroad is the only railroad which passes through Pitt, and thus it is the only railroad which could render any transportation services to a warehouse in that village. Consequently, the only railroad which the lessee could reasonably patronize in shipping its goods, wares and merchandise would be the defendant's line, and, as far as the record shows, the only carrier which could transport goods to the lessee's warehouse would be the lessor. There is no showing that other warehousemen in the village were not given the same rights or rates of rental and other privileges as those accorded the lessee herein. Under the circumstances, therefore, the mere granting of the lease can scarcely be characterized as a granting of a bonus or concession to a shipper in violation of either the Elkins Act or the Interstate Commerce Act. Certainly, no presumption of violation of law should be invoked merely from the granting of the lease to the shipper under the admitted facts and circumstances herein. It would seem that the part played in the granting of the lease by the covenant referred to is so inconsequential as to be reduced to de minimis. In other words, the consideration for the lease was the money rental, the payment of the taxes, etc., and not the covenant to patronize the lessor's railroad. Such covenant, together with the other covenants of the lease, was merely incidental rather than the controlling consideration for the granting of the lease. It may not be amiss to point out that the same right of lease on defendant's right of way accorded to the lessee could, under the statutes of Minnesota, be obtained by any other warehouseman upon paying reasonable rental therefor. As far as the showing here discloses, this lessee was in no better position by reason of the obtaining of this lease than he would have been if he had proceeded under the statute.

The situation on this motion for summary judgment is to be differentiated from

that which was before the court in Central of Georgia Ry. Co. v. Blount, 5 Cir., 238 F. 292. There, there was no payment of adequate rental; in fact, no money rent whatsoever was paid. The controlling consideration for the lease in that case was the agreement to ship freight over the lessor's line. This is apparent from the court's statement, wherein it said at page 296 of 238 F.: " * * * The whole tenor of the lease leaves no room for reasonable doubt that the provisions of it looking to the bringing about of a continued preferential treatment of the lessor by the tenant in the matter of the shipment of freight constituted, if not the sole, at any rate the controlling, substantial inducement to the lessor for allowing its land to be occupied and used without the payment of rent."

Consequently, the shipper in the Blount case received rent-free property in consideration for transporting its merchandise over the lessor railroad, and hence clearly it received a bonus or benefit which the carrier could not confer on other shippers of like articles. Here, the plaintiffs have pointed out no concession or privilege accorded to the lessee as a shipper which was not accorded to every other shipper of like merchandise over the defendant's lines. The record is barren of any showing that the lessee did not by its money rental pay full consideration for the rights accorded to it under the lease.

As to the question of the effect of paragraph 7 of the lease, plaintiffs have seen fit to submit the matter on the lease itself and the facts of which the Court may take judicial notice. No other showing regarding this issue is submitted by affidavit, pleading, or otherwise. Upon the record submitted, therefore, it would seem that the mere granting of this lease in no way runs afoul of the Interstate Commerce Act or the Elkins Act, and without more, the Court would not be justified in concluding that the lease is invalid.

The purpose of Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, is to dispose of cases in which there is no genuine issue of any material fact, even though an issue may be raised by the pleadings. Fletcher v. Krise, 73 App.D.C. 266, 120 F.2d 809. On this showing, defendant has established that plaintiffs have no cause of action. Such showing has not been successfully controverted by plaintiffs. The defendant is entitled to a summary judgment in its favor. It is so ordered. An exception is allowed to the plaintiffs.