**MICHIGAN MILLERS MUT. FIRE INS. CO. et al. v. CANADIAN NORTH-ERN RY. CO.**

No. 13089.

Circuit Court of Appeals, Eighth Circuit.

Dec. 26, 1945.

Rehearing Denied Jan. 23, 1946.

LeRoy Bowen, of Minneapolis, Minn. (Bowen & Bowen, of Minneapolis, Minn., on the brief), for appellants.

W. O. Bissonett, of Duluth, Minn., for appellee.

Before GARDNER, THOMAS, and RIDDICK, Circuit Judges.

GARDNER, Circuit Judge.

This was an action brought by Michigan Millers Mutual Fire Insurance Company and three other fire insurance companies against Canadian Northern Railway Company, to recover damages caused by the destruction by fire of a warehouse or grain elevator located on the right of way of the Railway Company, it being alleged that the fire was caused to be set by the defendant and negligently permitted to get beyond its control so that it consumed the warehouse or elevator, with its contents, on which the insurance companies had issued fire insurance policies, insuring the warehouse or elevator against loss or damage by fire in the aggregate amount of $16,964.-91. It was alleged that the plaintiffs, following the destruction of the elevator, pursuant to their obligation, paid the Northern Farmers Cooperative Exchange, the owner of the elevator, on account of the loss and damage, the sum of $16,964.91, and that by reason of such payment it became subrogated to the rights of the insured. The Railway Company answered, denying negligence, and set up as an affirmative defense that the lease under which the insured held the property contained provision that if during the term of the lease any buildings placed on the leased premises should be damaged, injured or destroyed by any act or thing done or omitted by the Railway Company, negligently or otherwise, the lessee should not by reason thereof have any claim or demand against the company, nor be entitled to any compensation or indemnity. The parties will be referred to as they appeared in the trial court.

Defendant, after answer, moved for summary judgment, which motion was based upon the pleadings, supplemented by stipulations and affidavits. The facts may be stated as follows:

Defendant is a Canadian corporation, engaged in business as a common carrier by railroad, and operates lines in Minnesota and elsewhere. It is a part of the system known as National Railway System and also as Canadian National Railway, extending over various lines in Canada and into the United States. Pitt is a village located in Minnesota on a branch line of the defendant which extends from Duluth, Minnesota, to the Canadian border and thence beyond. In September, 1941, defendant leased to John P. O'Neil, a private warehouseman, part of its right of way at Pitt as a site for a warehouse or elevator. As originally written the lease was for a term of one year, with a right of extension thereafter from year to year, at an annual rental of $10. On October 24, 1942, O'-Neil assigned the lease to Northern Farmers Cooperative Exchange. This assignment was accepted and approved by the defendant on October 29, 1942. On October 24, 1942, the Northern Farmers Cooperative Exchange signed an agreement by which it undertook to perform the terms of the lease as O'Neil had agreed to perform them, and from October 29, 1942, until the fire, the Northern Farmers Cooperative Exchange operated an elevator for the purpose of purchasing, storing and shipping grain. At the time of the fire the Exchange not only owned the building but the entire contents thereof, including all grain and the elevator machinery. In addition to the paragraph or clause exempting the Railway Company from damages because of any matter or thing done or omitted to be done by it, negligently or otherwise, the lease contained provision that:

"During the continuation of this lease, so far as the Lessee can legally control the same, all freight shipped to or from the premises hereby demised, coming from or destined to any point reached by the Lessor's railway, or its connections, shall be routed for the greatest possible distance over the National Railway System."

After assignment of the lease, the Exchange remodeled the building and constructed a chute or spout through which grain could be passed from the warehouse to a railroad car. When in use the chute extended from the warehouse to the railroad car on the adjacent track. On April 8, 1943, defendant placed a freight car alongside the elevator so that it might be loaded by the Exchange with grain from the elevator for transportation. Defendant caused a fire to be set out on its right of way near the elevator and negligently failed to keep it under control so that it spread to the car spotted near the elevator and then into the elevator, causing damage to the elevator and the grain stored in it in excess of $16,964.91. As before noted, plaintiffs had issued a joint policy of fire insurance covering the building and its contents, and having paid the loss sued defendant as subrogees of the insured. The trial court held that plaintiffs could not recover because of the provision in the lease exempting defendant from liability for its own negligence, and entered judgment dismissing plaintiffs' complaint on its merits. On appeal plaintiffs contend that the provision in the lease exempting defendant from liability for its own negligence is void as against public policy, and that the loss was caused by acts of the defendant in its capacity as a common carrier and not as a lessor.

It is generally held that a railroad company may by contract exempt itself from liability for damages to buildings or structures upon its right of way due to fires, even though such fires are attributable to its own negligence. James Quirk Milling Co. v. Minneapolis & St. L. R. Co., 98 Minn. 22, 107 N.W. 742, 116 Am.St.Rep. 336; Millers' Nat. Ins. Co. v. Minneapolis, St. P. & S. S. M. R. Co., 132 Minn. 151, 156 N.W. 117; Commercial Union Assur. Co. v. Foley Bros., 141 Minn. 258, 169 N. W. 793. Conceding this general rule, plaintiffs assert that it is not here applicable because defendant as a common carrier could not validly contract to exempt it from liability for its own negligent acts. Ordinarily a common carrier is an insurer against loss as to all property committed to it for transportation. An apparent modification of this general rule may be said to exist where a shipper is offered a choice of rates, the lower rate being conditioned upon his agreeing to a stipulated valuation of his property in case of loss even by the carrier's negligence. If, under such circumstances, he chooses the lower valuation intelligently and freely, he can not thereafter recover more than the value which he has placed upon his property. Ansaldo San Giorgio I v. Rheinstrom Bros. Co., 294 U.

S. 494, 55 S.Ct. 483, 79 L.Ed. 1016; Union Pac. R. Co. v. Burke, 255 U.S. 317, 41 S.Ct. 283, 65 L.Ed. 656.

In making contracts, not in its capacity as a common carrier, but as an owner of property, a railroad company leasing such property to others is not subject to any different rule of law than that applicable to other property owners. James Quirk Milling Co. v. Minneapolis & St. L. R. Co., supra; Commercial Union Assur. Co. v. Foley Bros., supra; Northern Pac. R. Co. v. Thornton Bros. Co., 206 Minn. 193, 288 N.W. 226; Hartford Fire Ins. Co. v. Chicago, M. & St. P. R. Co., 175 U.S. 91, 20 S.Ct. 33, 44 L.Ed. 84; Santa Fe P. & P. R. Co. v. Grant Bros. Construction Co., 228 U.S. 177, 33 S.Ct. 474, 57 L.Ed. 787; New York Cent. R. Co. v. Lockwood, 84 U.S. 357, 21 L.Ed. 627; Checkley v. Illinois Cent. R. Co., 257 Ill. 491, 100 N.E. 942, 44 L.R.A.,N.S., 1127, Ann.Cas.1914A, 1202.

While a railroad is a common carrier, the strict rule with reference to its liability for the loss or damage of property entrusted to it for transportation is not applicable to all its acts or activities. In fact, text writers who treat the subject of railroads rarely include in that subject the law applicable to common carriers. The subjects are recognized by the courts and all text writers as being separate and distinct from each other. Thus, in Santa Fe P. & P. R. Co. v. Construction Co., supra [228 U.S. 177, 33 S.Ct. 477], the Supreme Court, speaking through Chief Justice Hughes, among other things, said:

"In constructing, improving, or repairing its road, and in building its extensions and branches, the railroad company is providing facilities for its service as a common carrier, but, of course, is not acting as such."

As pointed out by the trial court in the instant case, defendant's employees when they "burned over" the defendant's right of way, were engaged in maintenance work as much as if they were engaged in repairing or improving the roadbed. There was no claim for any alleged loss of grain which may have been in defendant's car, nor is there any claim that any person or concern other than the lessee had any ownership in the property destroyed.

In Checkley v. Illinois Cent. R. Co., supra, the Supreme Court of Illinois in upholding the validity of a lease quite similar in principle to the one in the instant case said [257 Ill. 491, 100 N.E. 944]:

"The lease by appellee of a portion of its right of way for a warehouse does not relate to any of the duties imposed by the law upon appellee as a common carrier. The public is in no way concerned in this transaction; nor is it a matter of public interest whether the loss of the property destroyed by fire shall fall on one party, rather than on the other. The situation is entirely different between the loss of this warehouse and its contents and the loss of goods entrusted to a carrier for transportation."

It is stated in appellants' brief in effect that defendant was engaged as a common carrier in loading the grain into its car at the time the fire was set out on its premises near the warehouse. This statement is not warranted by anything in the record. The defendant had placed its car at the elevator but had nothing to do with the loading of the grain from the elevator. In other words, there had been no delivery of the grain for transportation and it was not in the custody of the defendant at the time the fire was set out. The general rule is that the property must be delivered into the hands of the carrier and accepted by it before it becomes liable as a common carrier. In performance of its duty the defendant had placed the car on the siding for loading. While the carrier loads all inanimate or ordinary freight tendered in less than carload lots, it is the duty of the shipper to load carload freight in all cases where for his convenience the car is placed at his warehouse or on public team tracks. Adams v. Mills, etc., 286 U.S. 397, 52 S.Ct. 589, 76 L.Ed. 1184; Pennsylvania R. Co. v. Kittaning Iron & Steel Mfg. Co., 253 U.S. 319, 40 S.Ct. 532, 64 L.Ed. 928.

It is commonplace to say that one may contract against liability for damages resulting from his own negligence unless such damage involves the breach of a public duty or a duty imposed by law. Public policy will not countenance a contract which purports to relieve either of the contracting parties from the consequences of the breach of a public duty or the breach of a positive statute. But the same public policy sustains the right of contract unless such contract violates some principle of graver importance to the general public. Weirick v.

Hamm Realty Co., 179 Minn. 25, 228 N.W. 175; Northern P. R. Co. v. Thornton Bros. Co., supra. The Railway Company in making a contract as to property located on its right of way acts in a private capacity and not as a common carrier, and in such capacity it owes no duty to the public to exercise care, and may exact its own conditions as to occupancy. Griswold v. Illinois Cent. R. Co., 90 Iowa 265, 57 N.W. 843, 24 L.R.A. 647; James Quirk Milling Co. v. Minneapolis & St. L. R. Co., supra. In such circumstances the public has no interest in the question as to which of the parties shall suffer for the loss. Hartford Fire Ins. Co. v. Chicago, M. & St. P. R. Co., supra. As said in James Quirk Milling Co. v. Minneapolis & St. L. R. Co., supra [98 Minn. 22, 107 N.W. 743]:

"In making the lease in question the railway company was dealing with individuals in reference to the use of its property only remotely, if at all, connected with its business as a common carrier. No law imposed upon it the duty of leasing a portion of its right of way to the appellants."

But it is urged that this was a public warehouse and hence the provision exempting from liability for negligence was void. This lease was originally to an individual who did not operate a public warehouse. The lease was assigned with consent of the lessor and the Exchange as assignee of the lease agreed in writing "to pay the several sums of money in the said hereinbefore referred to lease provided, on the days and times when the same shall become due, including any arrears now outstanding, and to do, observe, perform and permit all other acts and things which the said John P. O'Neil in said lease covenanted with the said The Canadian Northern Railway Company to do, observe, perform and permit, and that in default thereof the said The Canadian Northern Railway Company shall have the same rights against all parties as to cancellation of the said lease and otherwise as The Canadian Northern Railway Company has or had against the said John P. O'Neil in case of default by it." This was simply an assignment of the lease by consent of the lessor and was not a new lease. As said by the Supreme Court of Minnesota in Keegan v. Heilman Brewing Co., 129 Minn. 496, 152 N.W. 877, 878, L.R.A.1916F, 1149, "* * * in no sense is an assignment of a lease and assent thereto to be regarded as a new leasing." The Exchange as a public warehouse, under the Minnesota statute if it desired to use a site upon a right of way of the railroad, might make application to the Railway Company, which might accept or reject the offer of compensation for use. If the offer is accepted, the public warehouse is entitled to use the site, but if it is rejected a proceeding in court may be commenced in which a judgment may be rendered as to the amount of compensation for the use of the site. The Minnesota law recognizes that a public warehouse may enter into a contract with a railway company for the use of a site along the right of way. C. 230, Minn.Stat.1941. A contract so entered into as a result of negotiations, rather than legal proceedings, can not, we think, be said to violate any public policy of the State of Minnesota. In Order of United Commercial Travelers v. Meinsen, 8 Cir., 131 F.2d 176, 179, we said:

"By the public policy of a state is meant 'the law of the state, whether found in the constitution, the statutes, or judicial records.'"

The mere fact that the Exchange is a public warehouseman, and hence, empowered under the Minnesota law to acquire the use of a site by action equivalent to procedure in eminent domain, does not prohibit it from entering into a lease, as it did, with the exemption clause here considered. Certainly, the public elevator could discharge its duty to the public as well under a lease with such a provision in it as under a lease without it. It would be quite immaterial to one storing or selling its grain whether the lessee of a site for an elevator, public or private, had so stipulated in his lease.

It is further argued that the Exchange in storing grain for others acts as bailee and that as such it could maintain an action against a third party for damages to the stored grain, and that by the stipulation of exemption for liability on account of negligence, the carrier has violated its common law obligation to the public. The short answer to this would seem to be that the contract is not one concerning the relationship of common carrier to the public, nor, indeed, to the Exchange. It is not conceivable that a contract between the defendant and the Exchange could affect the recovery in an action between the bailor or the Exchange suing as bailee for the benefit of the bailor, and the defendant. Insofar as the bailee sues for the benefit of the bailor, it is a representative action, and

defenses open to the defendant, if the action were by the bailor, are just as available to the third person as if the bailor had brought his own action. Again, it is to be observed that the exemption provision is limited as follows:

"* * * the lessee shall not by reason thereof have any claim or demand against the lessor, or such agents, nor be entitled to any compensation or indemnity."

The rights of the public do not purport to be limited nor prejudiced by the provisions of the lease, and it appears that the Exchange at the time of the fire "was the owner of said elevator and warehouse building and the contents thereof, including the grain stored therein." This forecloses the argument that a member of the public who may be bailor of grain in the warehouse might have claims by reason of the fire loss. This contract was not illegal on its face. There is no evidence of any illegality in its performance and it was certainly capable of being performed in a legal manner. If it were possible to perform it in an illegal manner, the illegality not appearing on the face of the instrument, that fact would not render it unenforcible as contrary to public policy. Keith Furnace Co. v. Mac Vicar, 225 Iowa 246, 280 N.W. 496; Cochran v. Burdick, App.D.C., 70 F. 2d 754; Gardiner v. Burket, 3 Cal.App.2d 666, 40 P.2d 279. The fact that the Exchange was licensed as a public warehouse does not preclude it from storing its own grain. State ex rel. Railroad & Warehouse Comm. v. W. W. Cargill Co., 77 Minn. 223, 79 N.W. 962. The Exchange deliberately entered into a private contract. It voluntarily accepted its provisions, including that which released the Railway Company from any liability in the event the warehouse or its contents were destroyed by fire through the Railway Company's negligence. As already observed, it could have proceeded under Chapter 230, Minnesota Statutes of 1941, but it elected not to do so. The defendant was under no common law obligation to grant any lease to the property, and in the circumstances here disclosed we are of the view that the exemption clause in the lease is not contrary to the public policy of the State of Minnesota.

Plaintiffs finally urge that the contract here involved by reason of its provisions is more than a lease but affects the relationship of common carrier and shipper. In support of this contention reference is made to the above quoted paragraph 7 of the lease.

Plaintiffs urge that this provision of the contract is illegal because in effect it grants a rebate or preference to the Exchange contrary to the provisions of Sections 2 and 20(11) of the Interstate Commerce Act, 49 U.S.C.A. §§ 2 and 20 (11) and the Elkins Act, 49 U.S.C.A. § 41. The lease provides for an annual cash rental of $10. Pitts is a village of twenty-three inhabitants. The defendant's railroad is the only one serving the village, and there is neither allegation nor proof that the rental stipulated is not the reasonable rental value of the premises. There is no evidence that any other carriers subject to the provisions of the Interstate Commerce Act serve the village of Pitt, and as the burden of proof is on the plaintiffs, we must assume that there were no others. The premises are 103 feet long by 50 feet in width, and the lessee, in addition to the cash rental, agreed to pay all "lawful rates, taxes and assessments" that might become payable in respect to the demised premises, including taxes assessed for local improvements. It is certainly conceivable that the special assessments for local improvements might be levied in quite a substantial amount. It can not, therefore, be said that the lease operated to confer any benefit on the lessee as a shipper of freight which the defendant did not and could not confer on other shippers, or that it had the effect of making the rates paid on shipments contracted by the lessee less than those named in the defendant's published tariffs. Certainly, if a fair cash consideration was provided by this lease, then no charge of discrimination or of preference could be sustained. There is nothing to indicate that this lease is in fact, or that it was intended to be, preferential or discriminatory in any way. The lessee is not required to do any illegal act, it being recited that he is to control only so far as he can legally do so. The contract is not void on its face and the burden of proving its alleged illegality was therefore on the plaintiffs. We think that the contract may be performed in a legal manner and there is no evidence that it is being performed in an illegal manner. Neither of the provisions in this contract objected to interferes with or tends to interfere with the

performance of the defendant's duties to the public.

We have considered all the other contentions urged by appellants, but are of the view that they are without merit. The judgment appealed from is therefore affirmed.